MATTER OF V—Q—

In EXCLUSION Proceedings

A-10550819

*Decided by Board September 16, 1960*

Admission—Occurs when finding of admissibility has been communicated to alien—Subsequent action under immigration laws must be taken in deportation proceedings.

Jurisdiction to examine an alien as an applicant for admission is lost when the inspecting immigration officer communicates his finding of admissibility to the alien. At that point an "admission" has occurred; the alien cannot be recalled, even immediately following inspection, for questioning within the exclusion process; and his right to remain in the United States can properly be determined only in deportation proceedings.

EXCLUDABLE: Act of 1952—Section 212(a)(12) [8 U.S.C. 1182]—Alien who has engaged in prostitution.

BEFORE THE BOARD

DISCUSSION: This case is before us on appeal from a special inquiry officer's order of May 20, 1960, directing that the appellant be excluded and deported from the United States on the above-stated ground.

The record relates to a 38-year-old female alien, a native and national of Mexico, who was lawfully admitted to the United States for permanent residence on April 16, 1956. On May 2, 1960, following a temporary absence in Mexico, she applied for admission to resume her residence and employment here. She arrived at the Santa Fe Street bridge (El Paso, Texas) immigration station, presented herself to one of two immigration officers on duty at the pedestrian inspection point therein, and produced her Alien Registration Receipt Card (Form I-151) for his examination. He told her to "go ahead," or words to that effect. Almost immediately thereafter, however, a bystander identified her as a prostitute, whereupon the admitting immigration officer sought to recall the appellant for further inspection. There is some controversy as to just how far she had progressed in the interim, but it appears to be free from doubt that she had proceeded at least 75 to 100 feet beyond the check point before the officer succeeded in taking her into custody. She was then subjected

78

to questioning by him and another immigation officer, after which these exclusion proceedings followed.

The issue here is whether the case properly lies in exclusion or expulsion proceedings. We hold that it is the latter.

The original jurisdiction to hold and exclude the appellant depended upon the custody of her person acquired at the time of her arrival, and this original jurisdiction continued until the question of her right to be admitted was determined in her favor, at which point the proceedings before the examining immigration officer must be regarded as closed. (See *United States ex rel. Fink* v. *Tod*, 1 F.2d 246; and *United States ex rel. Johnson* v. *Watkins*, 170 F.2d 1009.) At the time the appellant was told by the primary inspector to "go ahead" and proceeded 75 to 100 feet beyond the inspection point, the original jurisdiction to hold and exclude her terminated, because the question of her right to be admitted as a returning resident (cf. *Kwong Hai Chew* v. *Colding*, 344 U.S. 590) had been determined in her favor and she was no longer in the custody of the immigration officer. Support for our decision, which is unnecessary, can be found in another case decided this date (*Matter of L—P—*, A–6080883, B.I.A., unreported), wherein the Service made the subject of expulsion proceedings an alien who was taken into custody by Border Patrol officers at the Eagle Pass, Texas, immigration station after he had progressed not more than six or eight feet from the point where an immigrant inspector had "admitted" him as a United States citizen.

We note that the district director, in the Government's brief in support of the special inquiry officer's order, has cited the case of *United States* v. *Day* (43 F.2d 917) as authority for the proposition that the "admission" of an alien to the United States is:

\* \* \* an act of the authorities, accepting the alien into the body of our inhabitants, not indeed as a citizen, but as a possible resident, whose stay may be permanent unless something unforeseen happens.

But we find nothing in that case contrary to the conclusion we have reached herein. An "admission" is the freeing of an alien from the legal restraints to which the immigration laws subject him. To accomplish an "admission," no physical movement on the part of an alien is required. He is not required to cross any line, whether actual or imaginary, or step in any direction or change his location. Other than to answer questions and offer his documents for inspection, the alien plays a passive role in the interplay from which an "admission" may result. "Admission" occurs when an authorized employee of the Service communicates in a tangible manner to an applicant for admission his determination that the applicant has established that he is not inadmissible under the immigration laws. At the point such communication is made and received by the ap-

plicant, "admission" has occurred. We have drawn this rule from examination of the pertinent cases, and we believe that it is one which can be applied in a practical, expedient, and standard manner. (See *United States ex rel. Patton* v. *Tod*, 297 Fed. 385; *United States* v. *Lazarescu*, 104 F. Supp. 771; *United States* v. *Vasilatos*, 209 F.2d 195.) Once "admission" has occurred, our holding is that exclusion proceedings are no longer proper and that expulsion proceedings are required.

Nor do we think that the case of *Gee Shew Hong* v. *Nagle* (18 F.2d 248), relied on by the district director, calls for a contrary holding. Therein, the alien applied for admission into the United States as the minor son of a Chinese merchant domiciled here. Immediately upon his arrival he was examined by medical officers of the United States Public Health Service and was found to be free from any loathsome or dangerous contagious disease. This fact was certified to the Commissioner of Immigration. The alien was thereafter examined by a board of special inquiry and was found to be admissible under the Chinese treaty and exclusion laws. For some reason not disclosed by the record, the Commission of Immigration and the board of special inquiry then referred the case back to the medical officers for a further physical examination. Upon such further examination the medical officers found that the appellant was afflicted with a loathsome and dangerous contagious disease and such fact was certified back to the board of special inquiry. Because of this certificate the right to admission was denied the alien. The court therein did not agree with the alien that the first medical certificate was final or conclusive, as the alien claimed. The court went on to say:

* * * The power to admit and exclude aliens is vested in a board of special inquiry, subject to the right of appeal, not in the medical officers of the Public Health Service. The certificate is furnished "for the information of the immigration officers and the board of special inquiry" and is evidence and nothing more. * * * In the exercise of their authority to admit and exclude aliens it is the duty of the immigration officers to inquire into every fact material to a correct decision of the matter before them and they have full and complete authority to that end as long as the case remains within their jurisdiction. Surely it cannot be successfully maintained that they are bound to admit an alien known or believed to be inflicted (sic) with a loathsome or dangerous contagious disease, simply because a medical officer has inadvertently or inadvisedly so certified. Under such a rule the officers would be compelled to admit the alien and then proceed to arrest and deport him for an illegal entry under another provision of the statute.

The distinction between the present case and the one relied on by the district director is that the record of the latter does not indicate that the alien was ever freed from the "legal restraints" to which the immigration laws had subjected him. We find therein no indication whatsoever that the question of the alien's right to be admitted was ever finally determined in his favor and, more impor-

tant, there is certainly in the record in that case no evidence of a final act of admission such as telling the alien to "go ahead," noting his documents to the effect that he was admitted, or otherwise so communicating the fact to the alien. Clearly, on the available record of that case, the original jurisdiction to hold and exclude the alien was never terminated by releasing the custody of his person.

Briefly, by way of summary, our holding is that exclusion proceedings are no longer proper and expulsion proceedings are required where:

(1) an alien's admissibility has been determined favorably to him by the examining immigration officer; and

(2) said officer has communicated this fact to the alien in an ascertainable manner.

**ORDER:** It is ordered that the appeal be sustained.