# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

BRIAN OROZCO,

*Petitioner,*

v.

MICHAEL B. MUKASEY,* Attorney
General,

*Respondent.*

No. 06-75021

Agency No.
A77-981-235

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
November 7, 2007—Pasadena, California

Filed March 25, 2008

Before: Kim McLane Wardlaw, Carlos T. Bea, and
N. Randy Smith, Circuit Judges.

Opinion by Judge N. R. Smith

---

*Michael B. Mukasey is substituted for his predecessor, Alberto R. Gonzales, as Attorney General of the United States, pursuant to Fed. R. App. P. 43(c)(2).

**COUNSEL**

Jaime Jasso, Immigration Appealworks, Westlake Village, California, for the petitioner-appellant.

Allen W. Hausman, Senior Litigation Counsel, Office of Immigration Litigation, United States Department of Justice, for the respondent-appellee.

**OPINION**

N.R. SMITH, Circuit Judge:

We hold that an alien, who obtains entry into the United States by fraudulent means, is statutorily ineligible for adjustment of status under 8 U.S.C. § 1255(a). Because petitioner Brian Orozco ("Orozco") obtained entry into the United States by presenting identification that was not his own to an immigration agent, we hold that the Board of Immigration Appeals ("BIA") and the immigration judge ("IJ") properly denied Orozco's application for adjustment of status under § 1255(a). Accordingly, we deny Orozco's petition for review.

**I. Factual and Procedural Background**

Orozco entered the United States on January 11, 1996, at the San Ysidro, California checkpoint. Orozco did not possess

valid identification that would have allowed him legally to enter the United States, nor was he eligible for any such valid entry document at the time of his entry. Orozco instead entered the United States illegally by using the permanent resident alien card, or "green card," of another person whom Orozco resembled.

Once inside the United States, Orozco developed an intimate relationship with Raquel Ontiveros, a United States citizen. On August 5, 2000, Raquel Ontiveros (then age 17) gave birth to their first child. Orozco married Raquel Ontiveros (hereinafter "Raquel Orozco") on April 23, 2001. On March 10, 2004, Raquel Orozco gave birth to the couple's second child.

In June 2001, Raquel Orozco filed an application for an alien relative visa on Orozco's behalf. At the same time, Orozco applied for adjustment of status. The Immigration and Naturalization Service ("INS") subsequently approved Orozco's visa application. The INS, however, denied Orozco's application for adjustment of status in 2002 after Orozco failed to appear for a required hearing.

Approximately three years later, immigration officials apprehended Orozco while he was on business for his employer. After apprehending Orozco, on April 13, 2005, the government charged Orozco with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) based on his status as an alien present in the United States without being admitted or paroled, or alternatively, as one who entered the United States at any time or place other than one officially designated. The government subsequently filed an amended charge of removability against Orozco, pursuant to 8 U.S.C. § 1227(a)(1)(A), charging him with presenting a counterfeit document to gain admission into the United States. Orozco admitted the factual basis for the amended charge and conceded removability.

Despite Orozco's concession that he was removable and his admitted use of fraudulent documents in order to gain entry

into the United States, Orozco filed another application for adjustment of status pursuant to 8 U.S.C. § 1255(a) and a waiver of inadmissibility pursuant to 8 U.S.C. § 1182(i). Orozco contended that, because he presented himself at the border for inspection and an immigration agent allowed him to enter the United States, he was "inspected and admitted" and thus eligible for adjustment of status pursuant to 8 U.S.C. § 1255(a). Orozco further argued that any fraud attendant to his entry into the United States could be waived under 8 U.S.C. § 1182(i).

The IJ determined that Orozco was statutorily ineligible for adjustment of status, because he could not satisfy the "lawful entry" requirement of 8 U.S.C. § 1101(a)(13)(A). The IJ further held that, even if Orozco did qualify for a waiver of inadmissibility under 8 U.S.C. § 1182(i), Orozco nevertheless remained statutorily ineligible for adjustment under 8 U.S.C. § 1255(a) because of his fraudulent entry into the United States.

In a one-member, unpublished decision, the BIA adopted and affirmed the IJ's decision in its entirety, citing *Matter of Burbano*, 20 I. & N. Dec. 872, 874 (BIA 1994), and "agree-[ing] with the Immigration Judge that [Orozco] is ineligible for adjustment of status . . . [because he] did not establish lawful entry and admission pursuant to [8 U.S.C. § 1101(a)(13)(A)]." Because the BIA adopted the IJ's decision and expressed no disagreement with it, we review the IJ's decision as if it were a decision of the BIA. *Abebe v. Gonzales*, 432 F.3d 1037, 1039-40 (9th Cir. 2005) (en banc).

Orozco petitioned to this court for review. We have jurisdiction under 8 U.S.C. § 1252, and we deny Orozco's petition.

## II.   Standard of Review and Jurisdiction

We review questions of law de novo. *Hernandez-Gil v. Gonzales*, 476 F.3d 803, 804 n.1 (9th Cir. 2007). The BIA's

unpublished one-member decision is not entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984). *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1113-14 (9th Cir. 2007) (citing *Garcia-Quintero v. Gonzales*, 455 F.3d 1006, 1012, 1014 (9th Cir. 2006)). Any deference afforded to the BIA's interpretation of the governing statutes and regulations or the IJ's interpretation of the same, which we review here as if it were the decision of the BIA, "will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Ortega-Cervantes*, 501 F.3d at 1113-14 (internal quotation marks omitted) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *Garcia-Quintero*, 455 F.3d at 1014-15 ("[W]e must undertake a *Skidmore* assessment of the BIA's decision to determine whether it warrants deference.").

We lack jurisdiction to consider discretionary denials of adjustment of status. *Ortega-Cervantes*, 501 F.3d at 1113 (citing 8 U.S.C. § 1252(a)(2)(B)(i)). However, we "retain jurisdiction to decide, as a matter of law, whether an alien is statutorily eligible for adjustment of status." *Id.* (citing 8 U.S.C. § 1252(a)(2)(D)).

## III. Analysis

Orozco seeks adjustment of his legal status to that of a permanent resident alien pursuant to 8 U.S.C. § 1255(a). "Adjustment of status provides a means for certain aliens present in the United States to become lawful permanent residents." *Ortega-Cervantes*, 501 F.3d at 1114.

Because our determination as to whether Orozco is eligible for adjustment of status requires statutory interpretation, we first look to the relevant statutory provisions. *See United States v. Turkette*, 452 U.S. 576, 580 (1981); *Brock v. Writers Guild of Am., W., Inc.*, 762 F.2d 1349, 1353 (9th Cir. 1985)

("In construing a statute in a case of first impression, we look to the traditional signposts of statutory construction: first, the language of the statute itself; second, its legislative history, and as an aid in interpreting Congress' intent, the interpretation given to it by its administering agency." (internal citations omitted)).

Section 245(a) of the Immigration and Nationality Act allows for adjustment of status in certain circumstances:

> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a).

[1] The term "admitted" is not defined in 8 U.S.C. § 1255(a). It is, however, defined in 8 U.S.C. § 1101(a)(13)(A). According to the statutory definition in that section, "[t]he terms 'admission' and 'admitted' mean, with respect to an alien, the *lawful entry* of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). The definitions found in 8 U.S.C. § 1101(a)(13)(A) apply to terms "used in [the] chapter" containing 8 U.S.C. § 1255(a). *See* 8 U.S.C. § 1101(a).

[2] Based on the unambiguous statutory language in 8 U.S.C. § 1255(a) and 8 U.S.C. § 1101(a)(13)(A), an alien's entry into the United States must be lawful for the alien to

qualify for adjustment of status under 8 U.S.C. § 1255(a). We further conclude that lawful entry requires more than simply presenting oneself for inspection and being allowed to enter the United States.

Our holding is in accord with 8 C.F.R. § 101.2, which provides that an alien whose entry was made and recorded under a mistake about his name shall be deemed to have been lawfully admitted so long as he proves that the record of claimed admission relates to him and that the name recorded at the time of the alien's entry into the United States was not used for the purpose of using the visa or passport of another person.

We have recognized the applicability of 8 U.S.C. § 1101(a)(13)(A) to another section of the Immigration and Nationality Act relating to removability. *See Shivaraman v. Ashcroft*, 360 F.3d 1142 (9th Cir. 2004). In *Shivaraman*, we reversed the BIA's decision regarding an alien's date of admission to the United States for purposes of deciding whether he had been convicted of a crime of moral turpitude committed within five years of the date of admission. *Id.* at 1143-49. We concluded that the BIA unreasonably interpreted the statutory language relating to the alien's "date of admission." In reaching that conclusion, we observed that 8 U.S.C. § 1101(a)(13)(A) "leaves no room for doubt, unambiguously defining admission as the lawful entry of the alien into the United States." *Shivaraman*, 360 F.3d at 1146.

Orozco argues that the "lawful entry" requirement imposed by 8 U.S.C. § 1101(a)(13)(A) relates to the location of the alien's entry into the United States. Orozco argues that so long as an alien presents himself for inspection at an authorized border crossing station and is allowed to enter the United States, the alien's entry was lawful for purposes of 8 U.S.C. § 1255(a). In essence, Orozco asks us to turn a blind eye to criminal and fraudulent acts underlying his entry,

because he arrived at an authorized border crossing station and presented himself for inspection.

**[3]** Orozco's entry into the United States was not lawful. *See, e.g.*, 18 U.S.C. § 1001(a) (stating that it is a federal crime for an individual knowingly and willfully to "make[ ] any materially false, fictitious, or fraudulent statement or representation" or "make[ ] or use[ ] any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry . . ." "within the jurisdiction of the executive, legislative, or judicial branch" of the United States); *see also* 18 U.S.C. § 1028(a)(7) (prohibiting an individual from using "a means of identification of another person with the intent to commit . . . any unlawful activity that constitutes a violation of Federal law."). Therefore, we reject Orozco's argument that his entry, while criminal, was lawful for purposes of 8 U.S.C. § 1255(a) because he presented himself for inspection and admission and was allowed to enter the United States. To hold otherwise would create an "absurd result," which we must avoid, if possible, when interpreting a statute. *See Andreiu v. Ashcroft*, 253 F.3d 477, 482 (9th Cir. 2001) (en banc).

Orozco also argues that both the BIA and IJ erred by declining to follow the BIA's published decision in *Matter of Areguillin*, 17 I. & N. Dec. 308 (BIA 1980). We disagree. In *Areguillin*, an alien was allowed to cross the United States border after a border control agent peered inside the vehicle in which she was a passenger, asked the driver a question, and then allowed the vehicle to pass. *Id.* at 309. The alien had no documentation that would have allowed her legally to enter the United States. *Id.* In denying relief under 8 U.S.C. § 1255, the IJ held that the alien had not been sufficiently "inspected and admitted" to allow for adjustment of status under 8 U.S.C. § 1255. *Id.*

The BIA in *Areguillin* reversed, holding that "[t]he rule that an alien has not entered without inspection when he presented

himself for inspection and made no knowing false claim to citizenship applies in determining whether an alien has satisfied the inspection and admission requirement of [8 U.S.C. § 1255]." *Id.* at 310. The BIA concluded that for the purposes of 8 U.S.C. § 1255, " '[a]dmission' occurs when the inspecting officer communicates to the applicant that he has determined that the applicant is not inadmissible [and] [t]hat communication has taken place when the inspector permits the applicant to pass through the port of entry." *Id.* at 310, n.6 (internal citation omitted).

*Areguillin* is of no persuasive value here because, with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Congress altered the statutory framework upon which the *Areguillin* decision rested. Prior to the enactment of IIRIRA, 8 U.S.C. § 1101(13) defined "entry" but did not define "admission." Further, the definition for "entry" was silent on whether the "entry" needed to be lawful. *See* 8 U.S.C. § 1101(13) (1994). With the enactment of IIRIRA, Congress defined "admission" to "mean, with respect to an alien, the *lawful entry* of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). In light of the amendment, Congress unambiguously required lawful entry into the United States as a statutory prerequisite to adjustment of status under 8 U.S.C. § 1255(a). Thus, *Areguillin* does not control.

**[4]** Finally, Orozco argues that he is entitled to adjustment of status under 8 U.S.C. § 1255(a) because he may be entitled to a waiver of inadmissibility under 8 U.S.C. § 1182(i). We disagree. In short, eligibility for a waiver of inadmissibility does not make Orozco's underlying entry into the United States lawful. As discussed above, lawful entry is a statutory prerequisite for adjustment of status under 8 U.S.C. § 1255(a). Orozco did not satisfy this requirement and, accordingly, is not eligible for adjustment under that section.

## IV.  Conclusion

We conclude that the IJ and the BIA correctly determined that Orozco was statutorily ineligible for adjustment of status under 8 U.S.C. § 1255(a). We therefore deny Orozco's petition for review.

**PETITION DENIED.**