**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YIN HING SUM,

                    *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,

                    *Respondent.*

No. 05-75776

Agency No.
A042-759-938

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 12, 2010—San Francisco, California

Filed April 23, 2010

Before: J. Clifford Wallace, Susan P. Graber, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown;
Concurrence by Judge Graber

## COUNSEL

Marie Kayal and Martin Avila Robles, Immigration Practice Group, San Francisco, California, for the petitioner.

Blair O'Connor, United States Department of Justice, Civil Division/Office of Immigration Litigation, Washington, D.C., for the respondent.

# OPINION

McKEOWN, Circuit Judge:

We consider a non-citizen's eligibility for a waiver of inadmissibility under § 212(h) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(h), where he has been convicted of an aggravated felony after his admission for permanent residence. Section 212(h), also referred to as the "§ 212(h) waiver" or "§ 212(h) relief," expressly bars from relief a non-citizen who has "previously been admitted to the United States as an alien lawfully admitted for permanent residence" and later is convicted of an aggravated felony. *Id.* Yin Hing Sum, a native of Hong Kong and citizen of China, was denied a § 212(h) waiver because he was convicted of a qualifying offense after his admission as a lawful permanent resident ("LPR").

Sum advances a curious position on appeal: namely, that because he was never legally admitted for permanent residence in the first place, but rather procured his admission by fraud or misrepresentation, the bar on § 212(h) relief does not apply. In other words, he argues that his initial fraud should save him now. We are not persuaded by this change-of-heart approach and deny the petition for review. Having enjoyed the benefits of LPR status, Sum cannot now shed his skin for the purposes of seeking beneficial relief.

The term "admitted" carries special significance within the regime of immigration statutes. Contrary to Sum's position, the previous "admission" to LPR status in § 212(h) does not refer to an admission in substantive compliance with the immigration laws, but rather an admission that is procedurally regular in nature. In this regard we interpret the term "admitted" as used in § 212(h), as distinct from the term "lawfully admitted" as that phrase is defined by the statute. Because Sum was "admitted" as an LPR in the sense of being inspected and authorized at the port of entry, but later con-

victed, he is barred from § 212(h) relief. It may seem, at first blush, an oxymoron to be "admitted" to the United States and yet "inadmissible" at the same time. But such is the text of the INA and the often opaque world of the immigration statutes.

## BACKGROUND

Sum was admitted to the United States as an LPR in 1990. Before obtaining residency, in December 1987, Sum was arrested, and allegedly convicted, for criminal coercion in the second degree, in violation of New York Penal Law § 135.60. In June 2001, some ten years after his admission, Sum was convicted of conspiracy to produce, use, or traffic in counterfeit access devices, in violation of 18 U.S.C. § 371, and sentenced to thirty-three months' imprisonment.

Following Sum's federal conviction, the government initiated removal proceedings in December 2001, charging Sum with removability for having been convicted of an aggravated felony, for an offense relating to counterfeiting for which the term of imprisonment is at least one year. *See* 8 U.S.C. §§ 1227(a)(2)(A)(iii) (detailing grounds for removability), 1101(a)(43)(R) (defining aggravated felony). Sum conceded removability in immigration court but argued that he was eligible for adjustment of status, withholding of removal, and relief under the Convention Against Torture. In conjunction with his adjustment application, Sum sought a § 212(h) waiver, arguing that he was not subject to the bar on § 212(h) relief because he was actually inadmissible at the time he obtained LPR status either because of his 1987 conviction or because of his failure to disclose that conviction when he entered as an LPR in 1990.[1]

---

[1]The record does not establish that Sum was convicted of second-degree criminal coercion in 1987, but only that he was arrested for this offense. As a result, Sum cannot argue that a conviction for a crime of moral turpitude rendered him inadmissible at the time he was admitted as an LPR. Sum can still argue, however, that his failure to disclose his arrest ren-

On August 17, 2004, the immigration judge ("IJ") denied all of Sum's applications for relief. With respect to Sum's application for a § 212(h) waiver, the IJ held there was "no basis on which to conclude that [Sum's] admission for permanent residence was somehow in violation of law." The IJ found Sum ineligible for the waiver and pretermitted his adjustment application. The Board of Immigration Appeals ("BIA") affirmed the IJ's decision without opinion. Because the BIA affirmed without opinion, we review the IJ's decision as the final agency determination. *Lanza v. Ashcroft*, 389 F.3d 917, 925 (9th Cir. 2004); *see also* 8 C.F.R. § 1003.1(e)(4)(ii).

## ANALYSIS

## I.  THE § 212(h) WAIVER

### A.  BACKGROUND OF THE WAIVER

[1] Section 212(h) authorizes the Attorney General to waive certain criminal grounds of inadmissibility, including a crime involving moral turpitude, a single conviction of simple possession of thirty grams or less of marijuana, multiple criminal convictions, prostitution, and offenses by diplomats asserting immunity from prosecution for serious criminal activities. 8 U.S.C. § 1182(h); *see also id.* § 1182(a)(2)(F) (authorizing waiver). Crucially for Sum, § 212(h) provides one of the few forms of relief available to non-citizens who have been convicted of aggravated felonies. Although § 212(h) does not itself waive an aggravated felony, it potentially provides discretionary relief to non-citizens who otherwise would be eligible for adjustment of status, but for certain grounds of inadmissibility such as crimes of moral turpitude.

---

dered him inadmissible at the time he entered because of "fraud or willfully misrepresenting a material fact." 8 U.S.C. § 1182(a)(6)(C)(i); *see also Forbes v. INS*, 48 F.3d 439, 442 (9th Cir. 1995) (holding that "knowledge of the falsity of a representation [regarding an arrest] is sufficient" to establish inadmissibility).

**[2]** However, LPRs and non-LPRs are not eligible for the § 212(h) waiver on equal terms. As part of the 1996 immigration reform, Congress amended the statute to make it more difficult for LPRs to obtain § 212(h) relief. Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, div. C, § 348, 110 Stat. 3009 (amending 8 U.S.C. § 1182(h)). The statute provides that "[n]o waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony." 8 U.S.C. § 1182(h). Accordingly, § 212(h) waivers are available to non-LPRs convicted of aggravated felonies, or non-citizens who were convicted of an aggravated felony prior to their admission as LPRs, but they are unavailable to non-citizens who were convicted of an aggravated felony *after* their admission as LPRs. *In re Michel*, 21 I&N Dec. 1101, 1104 (BIA 1998) (en banc); *see also United States v. Arrieta*, 224 F.3d 1076, 1080-81 & n.2 (9th Cir. 2000). We have upheld this distinction against an equal protection challenge as supported by a rational basis: namely, the judgment that LPRs, who "enjoy substantial rights and privileges not shared by other aliens" should be held to "a higher standard and level of responsibility than non-LPRs" and that aggravated felon LPRs are "less deserving of a 'second chance' than [nonLPRs]." *Taniguchi v. Schultz*, 303 F.3d 950, 958 (9th Cir. 2002) (alteration in original) (internal quotation marks omitted).

**B.  STATUTORY TEXT**

**[3]** The crux of this appeal is whether, despite the arrest Sum concealed at the time of his admission for permanent residence, Sum is now ineligible to seek § 212(h) relief. The IJ found that Sum was "previously admitted" for permanent residence within the meaning of § 212(h), had been convicted for an aggravated felony after his admission, and was therefore barred from seeking § 212(h) relief. Sum argues, however,

that because he acquired permanent residence through fraud or misrepresentation, he was never lawfully admitted for the purpose of the bar.

We review the proper construction of § 212(h) de novo, *Kankamalage v. INS*, 335 F.3d 858, 861-62 (9th Cir. 2003), employing all "traditional tools of statutory construction" to determine "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842, 843 n.9 (1984). "If Congress has done so, [our] inquiry is at an end; [we] 'must give effect to the unambiguously expressed intent of Congress.' " *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132 (2000) (quoting *Chevron*, 467 U.S. at 843).

**[4]** Our analysis begins with the text. The statutory text bears repeating here: "[n]o waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony." 8 U.S.C. § 1182(h). Despite its apparently redundant phrasing, the text is divisible into two distinct phrases: namely, (1) "an alien who has previously been admitted to the United States" and (2) "as an alien lawfully admitted for permanent residence." *Id.*; *see Martinez v. Mukasey*, 519 F.3d 532, 546 (5th Cir. 2008) (parsing the statute in this manner). The first phrase is controlling in this case. In other words, the application of the bar turns on what it means to have "previously been admitted" to the United States "as" an LPR.

This two-part structure is put in sharper relief when § 212(h) is read against the definitions provision of the INA, which sets forth separate definitions for "admitted," as used in the phrases "previously been admitted to the United States" and "lawfully admitted for permanent residence." *See* 8 U.S.C. § 1101(a) (defining terms "[a]s used in this chapter"). The statute defines "admission" in general as "the lawful

entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A); *see also* 8 C.F.R. § 1235.1 (setting forth inspection procedures). The statute defines "lawfully admitted for permanent residence" as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101(a)(20).

When viewed in these terms, it becomes clear that the key to understanding the statute is the general definition of "admission" under § 1101(a)(13)(A), which defines "admitted" as used in the bar's controlling phrase, "previously been admitted." The parties in turn have presented us with two possible approaches to this general definition of admission: one procedural in nature, and one substantive in nature. If "admission," or "lawful entry . . . into the United States," is understood procedurally, in the sense of referring to an inspection and authorization by an immigration officer, § 212(h)'s bar precludes non-citizens, like Sum, who successfully passed themselves off as LPRs at the port of entry, regardless of whether they are admissible in fact. If admission is understood substantively, § 212(h)'s bar precludes only noncitizens who were properly admissible as LPRs at the time of entry, and not individuals like Sum who were admissible through appearance alone.

**[5]** Addressing this issue of first impression in this circuit, we conclude that the plain meaning of the term "admission" in § 1101(a)(13)(A), and thus the term "previously been admitted" in § 212(h), refers to a procedurally regular admission and not a substantively lawful admission.[2] The First Cir-

---

[2]The only prior decision to address this issue was vacated by the panel. In *Orozco v. Mukasey*, 521 F.3d 1068 (9th Cir. 2008), *vacated by* 546 F.3d 1147 (9th Cir. 2008) (order), a panel of our court interpreted "admission" in § 1101(a)(13)(A) to describe a substantively lawful entry into the United States.

cuit came to the same conclusion, having construed the term "previously . . . admitted" in § 212(h). *Onwuamaegbu v. Gonzales*, 470 F.3d 405, 409 (1st Cir. 2006). The BIA also interpreted the term in the context of § 212(h). *In re Ayala*, 22 I&N Dec. 398, 401 (BIA 1998) (en banc).[3] Neither decision approached the question, as we do, from the starting point of the meaning of "admission" in the definition section of the statute, § 1101(a)(13)(A), but the result is the same.

As an initial matter, although we have not considered the meaning of "previously been admitted," we have construed the phrase "lawfully admitted for permanent residence" as defined in the identical predecessor statute to § 1101(a)(20). *Monet v. INS*, 791 F.2d 752, 753 (9th Cir. 1986). In *Monet*, we held that this latter phrase must be read to contemplate a substantively lawful admission for permanent residence. *Id.* at 753-54. The BIA's position is in accord. *In re Koloamatangi*, 23 I&N Dec. 548, 551 (BIA 2003). In both cases, the petitioners sought forms of relief from deportation for which lawful admission as an LPR was a condition precedent—in the case of *Monet*, former INA § 212(c) relief; in the case of *Koloamatangi*, cancellation of removal under 8 U.S.C. § 1229b(a). Because Monet and Koloamatangi were not actually admissible at the time of their admission to permanent residence, they were deemed ineligible to seek relief.[4] As *Monet* explained, " '[a]dmission is not lawful if it is regular only in form. The term 'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity.' " 791 F.2d at 753 (quoting *In re Longstaff*, 716 F.2d 1439, 1441 (5th Cir.

---

[3]The Fourth and Eleventh Circuits have cited *Ayala* with approval. *See Savoury v. U.S. Attorney Gen.*, 449 F.3d 1307, 1315 (11th Cir. 2006); *Obioha v. Gonzales*, 431 F.3d 400, 409 n.10 (4th Cir. 2005). We also applied *Ayala* in an unpublished decision, *Singh v. Holder*, No. 07-73440, 2009 WL 4884870, at *2 (9th Cir. Nov. 16, 2009).

[4]Monet had concealed a prior drug conviction at the time of admission, *Monet*, 791 F.2d at 753, and Koloamatangi had obtained LPR status through a bigamous marriage. *Koloamatangi*, 23 I&N Dec. at 549.

1983)); *accord Koloamatangi*, 23 I&N Dec. at 551.[5] Significantly, these cases focus on the word "lawfully" in the context of admission.

**[6]** However, the clause in § 212(h) controlling the outcome here is not "lawfully admitted for permanent residence," but rather the preceding phrase, "previously been admitted to the United States." This phrase in turn incorporates the definition of "admission" contained in § 1101(a)(13)(A). Although *Monet* and *Koloamatangi* define what constitutes a lawful admission for permanent residence under § 1101(a)(20), they do not tell us what "admission," or "lawful entry," means under § 1101(a)(13)(A) and thus what it means to be "previously . . . admitted . . . as an alien lawfully admitted for permanent residence" under § 212(h).

**[7]** When § 1101(a)(13)(A) is considered in the context of § 212(h), it becomes clear that Congress intended to define admission in procedural, rather than substantive, terms. By reading the entire phrase in § 212(h) to refer to substantively lawful admission for permanent residence, Sum's proposed construction renders the first clause superfluous. If Congress intended § 212(h) to bar only "alien[s] lawfully admitted for permanent residence," there would be no need to describe those non-citizens as also "previously . . . admitted to the United States." *See Onwuamaegbu*, 470 F.3d at 409; *Martinez*, 519 F.3d at 546; *see generally Romero-Ruiz v. Mukasey*, 538 F.3d 1057, 1062 (9th Cir. 2008) (noting that "legislative enactments should not be construed to render their provisions mere surplusage" (internal quotation marks omitted)).

---

[5]Other courts of appeals have applied the same analysis to determine eligibility for various forms of relief from removal. *See, e.g.*, *Walker v. Holder*, 589 F.3d 12, 19-21 (1st Cir. 2009) (derivative citizenship); *Mejia-Orellana v. Gonzales*, 502 F.3d 13, 15-17 (1st Cir. 2007) (cancellation of removal); *De La Rosa v. DHS*, 489 F.3d 551, 554-55 (2d Cir. 2007) (per curiam) (former INA § 212(c) relief); *Savoury*, 449 F.3d at 1313-17 (same); *Arellano-Garcia v. Gonzales*, 429 F.3d 1183, 1186-87 (8th Cir. 2005) (same).

In addition, adopting a substantive reading of the relevant phrase runs contrary to the purpose of § 212(h). "By using the term '*previously* admitted,' rather than (for example) 'previously and lawfully admitted,' Congress demonstrated that it specifically intended to penalize those immigrants who sought and gained LPR status only to abuse its benefits." *Onwuamaegbu*, 470 F.3d at 409; *accord Taniguchi*, 303 F.3d at 958. There is no reason why Congress would give a pass to non-citizens who had fraudulently obtained LPR status while barring from relief non-citizens who had legitimately obtained LPR status. *See Andreiu v. Ashcroft*, 253 F.3d 477, 482 (9th Cir. 2001) (en banc) (noting that "when possible, we interpret statutes so as to preclude absurd results").

Although the BIA has not dealt squarely with the meaning of "admission" through interpretation of § 1101(a)(13)(A), it has construed "previously been admitted" in § 212(h) to refer to a procedurally regular, rather than substantively lawful, "admission." *See Ayala*, 22 I&N Dec. at 401. Like Sum, Ayala was convicted of an aggravated felony after his admission as an LPR and sought a § 212(h) waiver in conjunction with an application for adjustment. Ayala argued that because he concealed ongoing criminal activity at the time of his admission for permanent residence, he was never lawfully admitted, and therefore was eligible for a § 212(h) waiver. *Id.* at 399-400.

The BIA rejected Ayala's claim, explaining:

> While the language of section 212(h) distinguishes those who have been previously admitted for permanent residence from those who have not, the statute does not, either expressly or by implication, distinguish between those whose admission was lawful and those who were previously admitted for lawful permanent residence but are subsequently determined to have been admitted in violation of the law.

> To read such a distinction into the statute would be arbitrary and capricious.

*Id.* at 401 (citation omitted). Ayala's criminal activity at the time of admission did not alter "the historical fact that, when he entered, it was in the status of a lawful permanent resident." *Id.* at 402. The same reasoning applies to Sum.

Stepping back from § 212(h), we find further support for the procedural construction of "admission" in § 1101(a)(13)(A), and thus in § 212(h), in the INA as a whole. *See United States v. Lewis*, 67 F.3d 225, 228-29 (9th Cir. 1995) (explaining that "[p]articular phrases must be construed in light of the overall purpose and structure of the whole statutory scheme"). The overall statutory context is especially relevant here as § 1101(a)(13)(A) is intended to define "admission" across the INA. *See* 8 U.S.C. § 1101(a) (defining terms "[a]s used in this chapter").

**[8]** The grounds of deportability set forth at 8 U.S.C. § 1227 confirm that Congress meant to define "admission" in terms of procedural, rather than substantive, lawfulness. When Congress amended § 1101(a)(13)(A) as part of the 1996 immigration reform, it also amended the INA to require that a non-citizen be "in and *admitted* to the United States" in order to be deportable. *Id.* at § 1227(a) (emphasis added). However, Congress left unchanged § 1227(a)(1)(A), which renders deportable non-citizens who were "admitted" to the United States, but were in fact *inadmissible* at the time of their entry. *Id.* Reading § 1227(a)(1)(A) with the introductory text at § 1227(a), it becomes clear that Congress understood a non-citizen who effected a procedurally lawful entry, but was substantively ineligible for admission, to have been "admitted" within the meaning of the statute. The Second Circuit adopted this construction of § 1101(a)(13)(A) in *Emokah v. Mukasey*, 523 F.3d 110 (2d Cir. 2008). At issue was whether Emokah was admissible under § 1182(a)(6)(A)(ii) as a battered non-citizen spouse who was present in the United States

"without admission or parole" when she had previously entered the United States on a visa obtained through fraud or misrepresentation. *Id.* at 118. Construing § 1101(a)(13)(A), the court concluded that Emokah had in fact been "admitted" when she entered on her fraudulent visa because she had entered after inspection and authorization by an immigration officer. *Id.* As the court explained, "an alien who enters the United States after inspection and authorization has been 'admitted' even if he was, 'at the time of entry . . . within one or more of the classes of aliens inadmissible by the law.' " *Id.* (quoting 8 U.S.C. §§ 1227(a)-(a)(1)). "The manner in which [Emokah] procured her admission rendered her inadmissible at the time of entry . . . but does not change the fact that she was, indeed, admitted." *Id.*; *accord Borrego v. Mukasey*, 539 F.3d 689, 693 (7th Cir. 2008) (holding that a non-citizen who entered on a B-2 visa despite a prior removal, and was therefore inadmissible at entry, had nonetheless been "admitted" to the United States).

Other provisions of the INA provide similar interpretative support. Section 1227(a)(1)(H) affords a limited waiver to non-citizens who are "inadmissible at the time of admission" based on fraud or misrepresentation, expressly contemplating that non-citizens may procure "admission" through fraudulent means. *See also In re Guang Li Fu*, 23 I&N Dec. 985, 988 (BIA 2006) (construing the waiver). Section 1227(a)(1)(G) renders deportable a non-citizen who procures "admission" as an immigrant through marriage fraud. These provisions underscore that "admission" in § 1101(a)(13)(A) includes non-citizens, like Sum, who entered the United States upon inspection and authorization, even though they were inadmissible at the time of entry.

In contrast, application of the substantive construction of "admission" would raise several problems that weigh in favor of rejecting that approach. For example, if "admitted" referred to substantively lawful admission, non-citizens who had committed fraud to gain admission to the United States or who

were otherwise inadmissible would not be subject to any of the grounds of deportability. Congress surely could not have intended this result. *See Andreiu*, 253 F.3d at 482.[6] Likewise, if § 1101(a)(13)(A) is read to define admission as a substantively "lawful entry," the terms "lawful" or "lawfully" become superfluous in the many provisions where they appear before the words "admission" or "admitted." *See, e.g.*, 8 U.S.C. § 1184(n)(2)(A) (referring to a "nonimmigrant alien . . . who has been lawfully admitted into the United States"); 8 U.S.C. § 1255(b) (referring to a "[r]ecord of lawful admission"); 8 U.S.C. § 1255a(a) (referring to an "alien lawfully admitted for temporary residence"); 8 U.S.C. § 1258 (referring to an "alien lawfully admitted to the United States as a nonimmigrant"); *see also Romero-Ruiz*, 538 F.3d at 1062 (noting principle of avoiding surplusage in statutory construction). There is no reason to graft such an awkward and inconsistent construction on the INA: the statutory scheme is complex enough without superimposing an interpretation that is not grounded in the statute as a whole.

## C.   Evolution of the Statute

The evolution of the statute provides a useful chronology and backdrop to the current statute. We need not resort to legislative history because the statute is not ambiguous. The current definition of "admission" is an artifact of the 1996 immigration reform. Prior to 1996, the INA primarily distinguished individuals on the basis of "entry" and not "admission." *See* § 1101(a)(13) (1994) (defining "entry" as "any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise"). "Entry" dictated what type of enforcement

---

[6]Indeed, Sum's case illustrates how the substantive definition of admission proves too much. If non-citizens were "admitted" only when entering the United States in substantive compliance with the immigration laws, Sum's initial fraud would not only make him eligible for § 212(h) relief; rather, he would not be deportable as an aggravated felon in the first place.

proceeding applied to determine whether a non-citizen could be removed or barred from the country. Non-citizens who had effected an "entry" into the United States were subject to deportation proceedings, while those who had not made an "entry" were subject to exclusion proceedings. Charles Gordon, Stanley Mailman & Stephen Yale-Loehr, 1-1 *Immigration Law and Procedure* § 1.03(2)(b) (2010).

This so-called "entry doctrine" resulted in an anomaly. Under this regime, non-citizens who had entered without inspection could take advantage of the greater procedural and substantive rights afforded in deportation proceedings, while non-citizens who presented themselves at a port of entry for inspection were subjected to more summary exclusion proceedings. IIRIRA addressed this anomaly by substituting "admission" for "entry" and by replacing deportation and exclusion proceedings with a general "removal" proceeding. Under the new regime, "admission" now determines whether a non-citizen is subject to grounds of deportability or inadmissibility within the context of a removal proceeding. *See* IIRIRA, Pub. L. No. 104-208, div. C, § 220, 110 Stat. 3009 (amending 8 U.S.C. § 1101(a)(13); *id.* div. C, § 240, 110 Stat. 3009 (enacting 8 U.S.C. § 1229a); *see also* H.R. Rep. No. 104-469, at 225-26 (Conf. Rep.) (1996) (explaining reasons for the amendment).

In adopting the term "admission," Congress did not legislate in a vacuum. Rather, the BIA had long defined admission through case law. In *Matter of Areguillin*, the BIA reaffirmed decades-old precedent holding that an " '[a]dmission' occurs when the inspecting officer communicates to the applicant that he has determined that the applicant is not inadmissible." 17 I&N Dec. 308, 310 n.6 (BIA 1980) (citing *Matter of V-Q-*, 9 I&N Dec. 78 (BIA 1960)). In other words, at the time of the 1996 amendment, the BIA defined "admission" in procedural terms.[7] The text of § 1101(a)(13)(A) expressly incorporates

---

[7]The BIA has continued to apply *Areguillin* in unpublished decisions following the 1996 reform. *See, e.g.*, *In re Orellana de Barden*, A95 672

this procedural definition. *See id.* (referring to "the lawful entry of the alien into the United States *after inspection and authorization by an immigration officer*" (emphasis added)). This approach is hardly surprising, as Congress was presumably aware of the BIA's definition of "admission" when it revised § 1101(a)(13)(A). *See Lorillard v. Pons*, 434 U.S. 575, 583 (1978) (explaining that " '[w]here words are employed in a statute which had at the time a well-known meaning . . . in the law of this country[,] they are presumed to have been used in that sense unless the context compels to the contrary' " (quoting *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59 (1911))); *see also Neder v. United States*, 527 U.S. 1, 21 (1999) (noting that where Congress uses terms with settled meanings, "a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms" (internal quotation marks omitted)).

**[9]** Congress' definition of admission as a "lawful entry" also confirms its intent to define admission in procedural terms. At the time of IIRIRA's passage, the BIA had long defined "entry" as: "(1) a crossing into the territorial limits of the United States, i.e. physical presence[,] plus (2) inspection and admission by an immigration officer[,] or (3) actual and intentional evasion of inspection at the nearest inspection point[,] coupled with (4) freedom from restraint." *Matter of Pierre*, 14 I&N Dec. 467, 468 (1973) (citations omitted).[8]

_____

921, 2007 WL 4699871 (BIA Nov. 13, 2007) (holding that "*Areguillin* . . . was not superseded by the 1996 amendments to the Act."); *In re Parra-Parra*, A77 751 684, 2004 WL 2418593 (BIA Oct. 5, 2004); *but see In re Osovskiy*, A97 698 552, 2008 WL 2401108 (BIA May 7, 2008) (citing *Orozco* before it was vacated to rule that *Areguillin* was not controlling "in the current case").

[8]*Accord Matter of Jimenez-Lopez*, 20 I&N Dec. 738, 740-41 (BIA 1993); *Matter of Patel*, 20 I&N Dec. 368, 370 (BIA 1991); *Matter of Ching*, 19 I&N Dec. 203, 205 (BIA 1984); *Matter of Lin*, 18 I&N Dec. 219, 220 (BIA 1982).

Thus, under the BIA's case law as it stood in 1996, "admission" referred to a "lawful" entry—that is, only those entries involving "inspection and admission by an immigration officer," as opposed to those "unlawful" entries involving "actual and intentional evasion of inspection at the nearest inspection point." *Id.*; *see also Areguillin*, 17 I&N Dec. at 310 n.6. By defining "admission" as "lawful entry," Congress incorporated this longstanding distinction into the INA. *See Lorillard*, 434 U.S. at 583. Procedure, and not substance, is determinative of an "admission" into the United States under §§ 1101(a)(13)(A) and 212(h).

## CONCLUSION

**[10]** The text, structure, and history of the statute confirm that the terms "admission" and "admitted" as used in §§ 1101(a)(13)(A) and 212(h) refer to inspection and authorization by an immigration officer at the port of entry. Because Sum was admitted as an LPR pursuant to such procedures and later convicted of an aggravated felony, he is barred from seeking § 212(h) relief. The petition for review is denied.

**DENIED**

---

GRABER, Circuit Judge, concurring:

I concur in the majority opinion but write separately to suggest that this situation also lends itself to application of the traditional notion of equitable estoppel.

In immigration cases, we have applied the principle of equitable estoppel against the government when the government has engaged in affirmative misconduct, such as a deliberate lie. *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1184 (9th Cir. 2001) (en banc). The party asserting estoppel must establish these traditional elements: (1) the party to be estopped

knows the facts, (2) the party intends that his conduct be acted on, (3) the other party is ignorant of the facts, and (4) the other party relies detrimentally on the conduct of the party to be estopped. *Salgado-Diaz v. Ashcroft*, 395 F.3d 1158, 1166 (9th Cir. 2005). And the party asserting estoppel must show that the public interest would not be burdened by estoppel. *Id.*; *cf. New Hampshire v. Maine*, 532 U.S. 742 (2001) (discussing elements of judicial estoppel).

In my view, these principles should apply to the goose as well as the gander in the circumstances here. When Sum sought LPR status, he knew the fact of his previous arrest. He deliberately lied by denying any previous arrest. He intended that the government act on his false representation of a clean record. The government did not know of the previous arrest. The government relied to its detriment on Sum's representation when it granted LPR status. Allowing Sum now to claim that he never was entitled to LPR status, after he lied to obtain it, damages respect for the law and damages the public interest. We should not countenance that change of position in the context of Sum's present attempt to obtain a favorable exercise of discretion from the government. *See Akbarin v. INS*, 669 F.2d 839, 844 (1st Cir. 1982) (noting that, in considering whether to estop the government, all equities must be weighed carefully and the petitioner's unclean hands, such as concealment of facts from the INS, counsel against estopping the government).