**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| PEDRO TAMAYO-TAMAYO,<br>*Petitioner*,<br><br>v.<br><br>ERIC H. HOLDER JR., Attorney<br>General,<br>*Respondent*. | No. 08-74005<br><br>Agency No.<br>A034-483-785<br><br>ORDER AND<br>AMENDED<br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
January 16, 2013—San Francisco, California

Filed February 28, 2013
Amended June 18, 2013

Before:  John T. Noonan, Susan P. Graber, and
Raymond C. Fisher, Circuit Judges.

Order;
Opinion by Judge Graber

## SUMMARY[*]

### Immigration

The panel ordered amended its opinion filed February 28, 2013, and published at 709 F.3d 795, and denied Pedro Tamayo-Tamayo's petition for review of the government's reinstatement of his prior order of removal, following his illegal reentry into the United States after having been removed.

In the original and amended opinions, the panel held that Tamayo's substantively illegal reentry met the illegal reentry requirement in the reinstatement statute, 8 U.S.C. § 1231(a)(5), even though he tricked a border official into allowing him to enter. In the amended opinion, the panel wrote that such holding is consistent with decisions of the Second and Tenth circuit courts.

### COUNSEL

Bernadette Willeke Connolly and Raul Ray, San Jose, California, for Petitioner.

Edward E. Wiggers, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

The opinion filed February 28, 2013, and published at 709 F.3d 795, is amended as follows:

On slip opinion page 6, first full paragraph, lines 1–2, change "Our decision in *Hing Sum v. Holder*, 602 F.3d 1092 (9th Cir. 2010), is not to the contrary. It interpreted" to "Our decision in *Hing Sum v. Holder*, 602 F.3d 1092 (9th Cir. 2010), and the BIA's decision in *In re Quilantan*, 25 I. & N. Dec. 285 (B.I.A. 2010), are not to the contrary. Those decisions interpreted".

On slip opinion page 6, first full paragraph, line 4, change "In that case," to "In *Hing Sum*,".

On slip opinion page 8, at the end of the first paragraph, insert:

> Our holding is consistent with the decisions of our sister circuits. *See Cordova-Soto v. Holder*, 659 F.3d 1029, 1031–35 (10th Cir. 2011) (rejecting the petitioner's argument that, because her reentry was "procedurally regular," § 1231(a)(5) was inapplicable), *cert. denied*, 133 S. Ct. 647 (2012); *Beekhan v. Holder*, 634 F.3d 723, 725 (2d Cir. 2011) (per curiam) (holding that "knowingly using another person's passport to reenter the United States" is an illegal reentry for purposes of § 1231(a)(5)).

With these amendments, Judge Graber has voted to deny the petition for rehearing en banc, and Judges Noonan and Fisher have so recommended.

The full court has been advised of the petition for rehearing en banc, and no judge of the court has requested a vote on it.

The petition for rehearing en banc is **DENIED**. No further petitions for rehearing or rehearing en banc will be entertained.

## OPINION

GRABER, Circuit Judge:

Petitioner Pedro Tamayo-Tamayo petitions for review of the government's reinstatement of a prior order of removal, following his illegal reentry into the United States after having been removed. Reviewing de novo, *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1136 (9th Cir. 2008), we reject Petitioner's legal challenges to the reinstatement order. Accordingly, we deny the petition.

## FACTUAL AND PROCEDURAL HISTORY

Petitioner was born in Mexico. He entered the United States in 1973. In 1989, the government ordered Petitioner removed to Mexico and removed him that same day.

Petitioner reentered the United States, without permission. For unknown reasons, the government chose to seek a new

order of removal instead of reinstating the 1989 order of removal. In 1993, the government again ordered Petitioner removed to Mexico and removed him the next day.

Petitioner reentered the United States without legal authorization yet again. According to Petitioner, he entered at a border crossing by presenting his pre-1989 permanent resident card to the border official. The border official allowed Petitioner physically to enter the country.

Thereafter Petitioner filed an application to replace his permanent resident card. Upon receiving the application, the government realized that Petitioner had no legal authority to be in the country. The government sent Petitioner a letter advising him of an appointment—ostensibly to discuss his application. When Petitioner arrived for his appointment, however, the government arrested him. The government presented its notice of intent to reinstate the prior order of removal, an immigration official reinstated the prior order of removal, and Petitioner was removed.

Petitioner timely petitions for review.

## DISCUSSION

Petitioner argues that the immigration officer committed legal error in determining (1) that he was subject to a valid prior removal order and (2) that he illegally reentered the United States. Petitioner also argues (3) that the immigration officer violated his due process rights by using a ruse to apprehend him.

## A.  Prior Removal Order

The government reinstated Petitioner's 1989 removal order pursuant to 8 U.S.C. § 1231(a)(5):

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

The plain text of the statutory provision was met with respect to the 1989 removal order:  The Attorney General found that Petitioner had reentered illegally after having been removed under the 1989 removal order, so that order is reinstated from its original date, and Petitioner shall be removed under that order at any time after reentry.  We reject, as unsupported and as contrary to the statute's text, Petitioner's bald assertion that the 1989 removal order was "superseded" or otherwise invalidated simply because a later removal order exists.

## B.  Illegal Reentry

"If the Attorney General finds that an alien has *reentered the United States illegally* after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated . . . ."  8 U.S.C. § 1231(a)(5) (emphasis added).  When Petitioner reentered the country after his 1993 removal, he lacked valid

documentation that permitted him to enter. Accordingly, he was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien "who is not in possession of a valid unexpired [authorization document]," and his entry was illegal.

It is true that Petitioner's most recent entry was procedurally regular: He presented himself to the border officials, he showed them his (invalid) alien registration card, and they allowed him physically to enter the country. But Petitioner's deceptive behavior at the border did not render his entry legal. Nothing in the statute or elsewhere suggests that Congress intended that the reinstatement provision would not apply to aliens who were able to dupe border officials into thinking that they had authorization to enter, or that Congress otherwise intended to reward fraudulent behavior.

Our decision in *Hing Sum v. Holder*, 602 F.3d 1092 (9th Cir. 2010), and the BIA's decision in *In re Quilantan*, 25 I. & N. Dec. 285 (B.I.A. 2010), are not to the contrary. Those decisions interpreted a different statutory provision—the definition of "admission" under 8 U.S.C. § 1101(a)(13)(A).[1] In *Hing Sum*, the petitioner had entered the United States as a legal permanent resident ("LPR") in 1990. *Id.* at 1093. In 2001, after he was convicted of a serious crime, the government sought to remove him. *Id.* at 1093–94. Petitioner wanted to apply for a statutory waiver, but that type of relief was available to non-LPRs only. *Id.* at 1094. Petitioner cleverly argued that, in 1990, he had obtained his

---

[1] For the same reason, the Board of Immigration Appeals' ("BIA") decision in *In re Areguillin*, 17 I. & N. Dec. 308 (B.I.A. 1980), also is not contrary to our decision. In that case, the BIA interpreted the phrase "inspected and admitted," as used in a now-revoked statutory provision.

LPR status by fraud and that, accordingly, he was a non-LPR for purposes of applying for the statutory waiver. *Id.*

We held that resolution of the case hinged on the statute's general definition of "admission" under 8 U.S.C. § 1101(a)(13)(A): "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Hing Sum*, 602 F.3d at 1095–96. We began our analysis of that term by noting that the word "admission" could mean a *procedurally regular admission*—"an inspection and authorization by an immigration officer"—or it could mean a *substantively legal admission*—the entry of those "who were properly admissible as LPRs at the time of entry, and not individuals like Sum who were admissible through appearance alone." *Id.* at 1096.

We concluded that, for reasons specific to § 1101(a)(13)(A) and to the term "admission," Congress intended "admission" to mean lawful entry only in the procedural sense. *Hing Sum*, 602 F.3d at 1097–1101. In particular, the substantive meaning would render part of the statute superfluous and also would lead to absurd results. *Id.* at 1097. For example, the immigration laws sometimes refer to "admission" and other times to "lawful admission." *Id.* at 1099. A procedural definition of "admission" gave effect to those provisions referring to "lawful admissions"— admissions that are both procedurally lawful and, because they are specified as "lawful admissions," substantively lawful. *Id.* We also found support for our procedural interpretation of "admission" in the "evolution of the statute." *Id.* Case law and BIA interpretation in effect at the time that Congress defined the term supported our interpretation. *Id.* at 1099–1101. Finally, we noted that our decision accorded with decisions by our sister circuits and the BIA. *Id.* at 1096

& n.3. In sum, we held that the history and context of that specific statutory provision demonstrated that Congress intended the procedural meaning.

Unlike in *Hing Sum*, nothing suggests that Congress intended the procedural definition to apply to the phrase "reentered the United States illegally" in § 1231(a)(5). Interpreting the term in its substantive sense does not lead to superfluous text or absurd results, and nothing in the history of § 1231(a)(5) suggests that Congress intended the procedural meaning of illegal reentry.

We hold that Petitioner's substantively illegal reentry met the requirement in § 1231(a)(5) that he had "reentered the United States illegally," notwithstanding the fact that he tricked the border official into allowing him physically to enter. Our holding is consistent with the decisions of our sister circuits. *See Cordova-Soto v. Holder*, 659 F.3d 1029, 1031–35 (10th Cir. 2011) (rejecting the petitioner's argument that, because her reentry was "procedurally regular," § 1231(a)(5) was inapplicable), *cert. denied*, 133 S. Ct. 647 (2012); *Beekhan v. Holder*, 634 F.3d 723, 725 (2d Cir. 2011) (per curiam) (holding that "knowingly using another person's passport to reenter the United States" is an illegal reentry for purposes of § 1231(a)(5)).

## C. Due Process

The government's decision to arrest and remove Petitioner when he showed up for his interview did not prejudice him. Accordingly, we need not, and do not, decide whether there was a due process violation. *See Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 496 (9th Cir. 2007) (en

banc) (holding that, to obtain relief, a petitioner must demonstrate a due process violation and prejudice).

"To show prejudice, [a petitioner] must present plausible scenarios in which the outcome of the proceedings would have been different if a more elaborate process were provided." *Id.* at 495 (internal quotation marks omitted). Here, Petitioner makes no allegation that the outcome of the proceedings would have or could have been different, had he been apprehended through other means. At oral argument, he asserted that he was prejudiced because he did not bring a lawyer with him, which he would have done had he known about the government's intentions. But he has not shown how having a lawyer present could have made any difference to the outcome. As discussed above, issuance of the reinstatement order was proper and, even with skilled legal counsel, no relief was available to Petitioner. Accordingly, Petitioner cannot show prejudice, so his due process claim fails. *See id.* at 496.

   **Petition DENIED.**