**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JESSICA JHOANA TELLEZ,<br>*Petitioner*, | No. 12-73424 |
| v. | Agency No.<br>A078-250-502 |
| LORETTA E. LYNCH, Attorney<br>General,<br>*Respondent*. | OPINION |

On Petition for Review of an Order of the
Department of Homeland Security

Argued and Submitted August 30, 2016
Pasadena, California

Filed October 24, 2016

Before: Alex Kozinski and Jay S. Bybee, Circuit Judges,
and Donald E. Walter,* Senior District Judge.

Opinion by Judge Kozinski

---

* The Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

## SUMMARY[**]

### Immigration

The panel denied Jessica Tellez's petition for review from the Department of Homeland Security's reinstatement of her expedited removal order on the ground that she illegally reentered the United States.

The panel held, on a question of first impression, that an alien had previously "entered" the United States for the purpose of the Immigration and Nationality Act's reinstatement provision's "reentry" requirement when the alien was issued a prior expedited removal order at a border-crossing checkpoint.

The panel noted that its decision is limited to the reinstatement provision's definition of reentry, and that it does not disturb the longstanding common-law definition of "entry." The panel wrote that it held only that the INA's reinstatement requirement of reentry after an initial removal encompasses those who were removed after coming into the U.S. at a border-crossing checkpoint and who subsequently returned.

The panel also held that Tellez's subsequent reentry was illegal even though she presented herself at the border and was waved through without question.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Matthew E. Roston (argued), Beverly Hills, California, for Petitioner.

Craig Alan Newell, Jr. (argued) and Carmel A. Morgan, Trial Attorneys; Shelley R. Goad, Assistant Director; Office of Immigration Litigation, Washington, D.C.; for Respondent.

**OPINION**

KOZINSKI, Circuit Judge:

This case raises a question of first impression for the federal courts: Has an alien "reentered" the United States for the purpose of reinstating a removal order, 8 U.S.C. § 1231(a)(5), when she was previously removed at a border-crossing checkpoint?

Jessica Tellez made her first known effort to cross the U.S. border at San Ysidro in 2000. She claimed to be a U.S. citizen, but a suspicious immigration officer referred her for a secondary inspection. Tellez then admitted that she was a Mexican citizen without a valid entry document. She was deemed inadmissible and signed a statement acknowledging that she could not return to the United States for five years. Tellez was then issued an expedited removal order under 8 U.S.C. § 1225(b)(1) and was returned to Mexico. Undaunted, Tellez returned to the United States the following week. She "dressed up in a nice, pretty dress," and "smile[d] at the immigration officer" from the passenger seat of a car. The officer waved the car through, and Tellez settled in the United States.

In 2012, Tellez applied for a waiver of inadmissibility and adjustment of her status to that of a lawful permanent resident. The applications were denied because she had previously falsely represented herself as a citizen. The Department of Homeland Security then reinstated Tellez's expedited removal order on the grounds that she had illegally "reentered" the country. *See* 8 U.S.C. § 1231(a)(5). Tellez petitioned for review.

**1.** Tellez claims that the reinstatement of her removal order is invalid because she did not "reenter" the United States. She argues that her initial attempt to cross the border did not constitute an initial "entry" that can create a subsequent "reentry."

The reinstatement provision states:

> If the Attorney General finds that an alien has *reentered* the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the *reentry*.

8 U.S.C. § 1231(a)(5) (emphasis added). So what creates a "reentry"? We hold that when, as here, an alien is issued an expedited removal order at a U.S. border-crossing checkpoint, that alien has entered the United States for the purpose of the reinstatement provision's "reentry" requirement.

We find our way to this conclusion by starting with the plain meaning of the provision in question. *See United States v. Migi*, 329 F.3d 1085, 1087 (9th Cir. 2003). The Immigration and Nationality Act (INA) doesn't define the term reentry—or, for that matter, entry. But common sense and a stack of dictionaries can tell us that the word enter means "[t]o come or go into." *The American Heritage Dictionary of the English Language* 436 (1976); *see also United States ex rel. Claussen* v. *Day*, 279 U.S. 398, 401 ("The word 'entry' by its own force implies a coming from outside."). Under this definition, Tellez entered the country when she left Mexico and came into the sovereign territory of the United States at the San Ysidro border-crossing station.

In addition, the section of the INA under which Tellez was first returned to Mexico—a provision that authorizes the "expedited *removal* of inadmissible arriving aliens," 8 U.S.C. § 1225 (emphasis added)—necessarily implies an initial entry. The verb remove is ordinarily defined as "[t]o move from a position occupied." *American Heritage Dictionary*, *supra*, at 1101. It makes no sense to speak of removing someone who has not yet entered or never occupied a position—say, removing Clint Eastwood from the papacy or removing a colony from Mars. Entry implies movement in; removal implies movement out. Tellez must have first entered U.S. territory in order to be removed from it. Having entered once, her second entry was a reentry.

We acknowledge that the definition of entry developed at common law has a narrower and more technical meaning: Entry "has not been accomplished until physical presence is accompanied by freedom from official restraint." *United States* v. *Pacheco-Medina*, 212 F.3d 1162, 1164 (9th Cir. 2000) (internal reference omitted). We have also used this

judge-made definition to interpret some criminal provisions of the INA. *See id.* at 1163–65; *see also United States* v. *Lombera-Valdovinos*, 429 F.3d 927, 928 (9th Cir. 2005) (noting that the term enter, for the purposes of 8 U.S.C. § 1326, "has a narrower meaning than its colloquial usage"). Our decision today—which is limited to the reinstatement provision's definition of "reentry"—does not disturb this longstanding common-law definition. We hold only that the INA's reinstatement provision, which requires reentry after an initial removal, encompasses those who, like Tellez, were removed after coming into U.S. territory at a border-crossing checkpoint and subsequently returned to the United States.

Our interpretation of the reinstatement provision is supported by the "fundamental canon of statutory construction that the words of a statute must be read . . . with a view to their place in the overall statutory scheme." *Food & Drug Admin.* v. *Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal reference omitted). Congress intended the reinstatement provision to sweep broadly. It expanded the provision in 1996 to cover all aliens who reenter the United States after being removed; its predecessor applied to only a subset of illegal reentrants. *See De Sandoval* v. *U.S. Att'y Gen.*, 440 F.3d 1276, 1279 (11th Cir. 2006) (comparing 8 U.S.C. § 1231(a)(5) with its predecessor 8 U.S.C. § 1252(f) (1994)). The legislative history of the 1996 amendment confirms that Congress sought to streamline the removal process and cover all entering aliens who violate a prior removal order. *See id.* at 1282 (discussing H. Rep. No. 104–469 and S. Rep. No. 104–249). It would be puzzling for Congress to significantly expand the reinstatement provision, yet leave open a truck-sized hole for all aliens first removed from a border crossing.

**2.** Tellez also claims that she did not reenter the United States illegally under 8 U.S.C. § 1231(a)(5) because she presented herself at the border and was waved through without question. But a successful entry can still be an illegal entry. *See Tamayo-Tamayo* v. *Holder*, 725 F.3d 950, 952 (9th Cir. 2013) (holding on similar facts that an entry was illegal because petitioner "lacked valid documentation that permitted him to enter"). There's no question that Tellez lacked valid documentation and intended to dupe border officials into letting her enter: Just a week before her successful entry, she signed a document acknowledging that she was prohibited from entering the country for five years. A pretty dress and charming smile are not substitutes for a visa. Her reentry was illegal.

**DENIED.**