**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| GARY TOMCZYK, *Petitioner*, v. ROBERT M. WILKINSON, Acting Attorney General, *Respondent*. | No. 16-72926 Agency No. A029-468-078 OPINION |

On Petition for Review of an Order of the
Department of Homeland Security

Argued and Submitted May 29, 2020
San Francisco, California

Filed February 3, 2021

Before: William A. Fletcher, Jay S. Bybee, and
Paul J. Watford, Circuit Judges.

Opinion by Judge W. Fletcher;
Dissent by Judge Bybee

## SUMMARY[*]

### Immigration

The panel granted Gary Tomczyk's petition for review of an order of the Department of Homeland Security ("DHS") reinstating his prior order of removal, and remanded, holding that a noncitizen has not "reentered the United States illegally" within the meaning of 8 U.S.C. § 1231(a)(5) based solely on the fact of inadmissibility at the time of reentry.

In 1990, Tomczyk was ordered excluded and deported after attempting to enter the United States from Canada. The IJ's order cited two grounds of exclusion, including one based on a controlled substance offense, and Tomczyk was given a form warning him of criminal penalties if he attempted to reenter the country without prior permission within one year of his deportation. Slightly more than one year later, he reentered and, in 2016, DHS entered an order reinstating his 1990 deportation order under § 1231(a)(5), which allows DHS to reinstate a prior order when a noncitizen "has reentered the United States illegally." Contesting the reinstatement, Tomczyk stated that, when he reentered in 1991, he was riding in a van and was waved into the country.

The panel concluded that Tomczyk did not "reenter the United States illegally" within the meaning of § 1231(a)(5), holding that illegal reentry requires more than mere status of inadmissibility. The panel explained that this case was fundamentally different from circuit precedent where the

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

court allowed reinstatement of prior deportation orders for noncitizens who had reentered the United States through fraud. The panel agreed with the government's tacit admission that its interpretation – that any time a previously removed noncitizen is unable to demonstrate that he was admissible at the time of reentry, that reentry was "illegal" – is not entitled to *Chevron* deference, noting that there is no evidence that the government developed its interpretation with a lawmaking pretense in mind and that a reinstatement order has no precedential value.

The panel also observed that, although the Immigration and Nationality Act ("INA") does not define "reenter[ing] . . . illegally," two related sections of the INA that provide civil and criminal penalties for certain wrongful entries, 8 U.S.C. § 1325, and reentries, § 1326, provide helpful guidance. The panel explained that many inadmissible noncitizens who enter or reenter the country do so without violating § 1325 or § 1326 because violation of these laws is based on the manner and circumstances of entry or reentry, as opposed to being based solely on inadmissibility.

The panel further explained that its conclusion was reinforced by: 1) the INA's provisions governing relief from removal, almost all of which are unavailable after reinstatement; 2) the severe practical difficulties of basing reinstatement solely on inadmissibility at the time of reentry, particularly if the reentry was several decades earlier; 3) the DHS regulation governing reinstatement, which strongly suggests that the manner and circumstances of an inadmissible noncitizen's reentry, rather than inadmissibility alone, is the determinative factor; and 4) this court's view, in *Morales-Izquierdo v. Gonzales*, 486 F.3d 484 (9th Cir. 2007)

(en banc), that reinstatement requires only a simple, ministerial determination by an immigration officer.

Dissenting, Judge Bybee wrote that he would hold that an alien who reenters while inadmissible commits an "illegal reentry" for the purpose of § 1231(a)(5). Judge Bybee wrote that Tomczyk was inadmissible when he entered the United States in 1990 based on a conviction in Canada for trafficking in a controlled substance, and his status—inadmissible—did not change between 1990 and 1991 when he reentered. For that reason, Judge Bybee concluded that Tomczyk's prior deportation order could be reinstated. Judge Bybee also wrote that the majority's opinion is inconsistent with this court's precedent and creates a circuit split with a decision from the Tenth Circuit.

## COUNSEL

Xavier Gonzales (argued), Las Vegas, Nevada, for Petitioner.

Victor M. Lawrence (argued) and Emily Anne Radford, Assistant Directors; Jesse Lloyd Busen and Craig A. Newell Jr., Attorneys; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

W. FLETCHER, Circuit Judge:

Gary Tomczyk is a Canadian citizen. He was deported from the United States in the summer of 1990 under a final order of deportation. Twenty-six years later, he was taken into custody by Immigration and Customs Enforcement in Las Vegas, Nevada, after an arrest for driving under the influence of alcohol. An immigration officer of the Department of Homeland Security ("DHS") reinstated his prior deportation order under § 241(a)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(a)(5). Tomczyk petitions for review of the reinstatement order.

The question before us is not whether Tomczyk may be removed from the United States. He does not contest that he is removable. The question, rather, is whether he may be removed pursuant to a reinstatement order. We hold that DHS failed to apply the correct legal standard under § 1231(a)(5) for entering a reinstatement order. We therefore grant the petition and remand for further proceedings.

## I. Background

Tomczyk was placed in exclusion proceedings in June 1990, after attempting to enter the United States from Canada. Following a hearing, an Immigration Judge ("IJ") ordered him "excluded and deported" on June 28, 1990. Without elaboration, the IJ specified that the order was "Pursuant to section 212(a)(20) & (23) of the Act." *See* 8 U.S.C. § 1182(a)(20), (23) (1988). In 1990, § 1182(a)(20) provided for exclusion of a noncitizen who lacked proper documents; § 1182(a)(23) provided for exclusion of a

noncitizen who had been convicted of a controlled substance offense or whom the immigration officer had reason to believe was a controlled substance trafficker. Tomczyk states in his brief that he had been convicted in Canada in 1971 of possession of a controlled substance and fined $300 (Canadian). He states that he had also been convicted in Canada in 1980 of possession of a controlled substance (apparently marijuana) with intent to distribute and fined $2,000, and of possession of marijuana and fined $100. Tomczyk was deported to Canada at Frontier, Washington, on July 2, 1990. According to his brief, Tomczyk later received a full and unconditional pardon for his offenses, and the convictions were expunged.

When Tomczyk was deported, he was given a Form I-296. The form warned him that he would be subject to criminal penalties if he attempted to reenter the United States within one year of the date of his deportation unless he first obtained permission from the Attorney General. In relevant part, the warning provided:

> If after your deportation is effected, you desire to reenter the United States within one year from the date of such deportation, you must, prior to commencing your travel to this country, request permission from the Attorney General to reapply for admission to the United States. . . .

> Your reentry within one year of the date of your deportation without the express permission of the Attorney General will subject you to prosecution as a felon and, if convicted therefor, you could be sentenced to

     imprisonment for not more than two years or
     fined not more than $1000, or both.

The warning was consistent with the provisions of the INA in effect at the time. *See* 8 U.S.C. § 1182(a)(16) (1988). The warning did not specify any restrictions on reentry after the expiration of the one-year period that began on July 2, 1990.

Tomczyk reentered the United States sometime during July 1991, at Sumas, Washington. The administrative record does not reflect the exact date on which he reentered, but the government does not contest on appeal Tomczyk's assertion that it was more than one year after July 2, 1990. In August 2016, Tomczyk was taken into ICE custody after his arrest in Las Vegas, Nevada, for driving under the influence of alcohol.

Following Tomczyk's arrest, DHS entered an order reinstating his 1990 deportation order, reciting that "[Tomczyk] illegally reentered the United States on or about 07/ /1991 at or near SUMAS, WA." The reinstatement order was signed by an immigration officer on August 15, 2016. In a written statement contesting the reinstatement, dated August 10, 2016, Tomczyk had written, "In 1991 when I reentered the U.S. I was riding in a van. We were asked where we were going and waved into the country, therefor[e] I have never felt that I entered the U.S. illegally at that time."

Tomczyk petitions for review of the DHS reinstatement order.

## II. Standard of Review

We review de novo any legal questions raised in a petition for review of a reinstatement order. *Ixcot v. Holder*, 646 F.3d 1202, 1206 (9th Cir. 2011); *see, e.g.*, *Tamayo-Tamayo v. Holder*, 725 F.3d 950 (9th Cir. 2013). We review any factual findings for substantial evidence. *Ixcot*, 646 F.3d at 1206. Our review is limited to the administrative record. *See* 8 U.S.C. § 1252(b)(4)(A).

## III. Discussion

The provision of the INA providing for reinstatement of removal (or deportation) orders, 8 U.S.C. § 1231(a)(5), allows DHS to reinstate a prior order when a noncitizen "has reentered the United States illegally." The consequences of reinstatement for a noncitizen are profound. Unlike a noncitizen subject to removal after a regular hearing before an IJ under 8 U.S.C. § 1229a, a noncitizen subject to reinstatement of a removal order under § 1231(a)(5) is entitled neither to a regular hearing before, nor to a decision by, an IJ. *See Morales-Izquierdo v. Gonzales*, 486 F.3d 484 (9th Cir. 2007) (en banc). Instead, a reinstatement order is entered after a summary proceeding before an immigration officer. A noncitizen whose prior order of removal is reinstated is thereafter ineligible for most forms of relief from removal, including asylum and inadmissibility waivers. *See* 8 C.F.R. § 241.8; *Perez-Guzman v. Lynch*, 835 F.3d 1066 (9th Cir. 2016). Tomczyk states in his briefing that, were he placed in ordinary removal proceedings under § 1229a, he would seek relief from removal to allow him to care for his severely disabled spouse, a United States citizen to whom he has been married for nearly thirty years.

Given the severe consequences of a reinstatement order, and the fact that the order is entered following a summary proceeding by an immigration officer, we upheld the legality of reinstatement under § 1231(a)(5) because the officer is required to make no more than a "narrow and mechanical determination[]." *Morales-Izquierdo* (en banc), 486 F.3d at 496. We wrote in *Morales-Izquierdo* that while the issues presented in ordinary removal proceedings under 8 U.S.C. § 1229a are "often complex and fact-intensive," "[t]he scope of a reinstatement inquiry under [§ 1231(a)(5)] is much narrower." *Id.* at 491. The narrow question whether a noncitizen has "reentered the United States illegally" within the meaning of 8 U.S.C. § 1231(a)(5), and therefore may properly be subject to a reinstatement order, is a question that "can be performed like any other ministerial enforcement action." *Id.*

Tomczyk reentered the United States sometime in July 1991. The question before us is whether he "reentered the United States illegally" within the meaning of § 1231(a)(5), and is therefore subject to removal pursuant to a reinstatement order entered after a summary proceeding before an immigration officer. For the reasons that follow, we hold that illegal reentry under § 1231(a)(5) requires more than mere status of inadmissibility. *Accord Ponta-Garca v. Ashcroft*, 386 F.3d 341, 343 (1st Cir. 2004) (reentering noncitizen not subject to a reinstatement order under § 1231(a)(5) based solely on inadmissibility (dictum): "[Petitioner] also contends that he did not reenter the country illegally but, rather, was inspected and allowed entry. If . . . [this] assertion is correct, the reinstatement provision would appear to be inapplicable by its express terms.").

As a preliminary matter, we note briefly the history behind § 1231(a)(5). When Tomczyk was deported in 1990, an IJ was authorized to reinstate a noncitizen's prior deportation order after reentry by the noncitizen. Reinstatement was keyed to the ground for the underlying deportation, and the category of noncitizens subject to reinstatement was small. *See* 8 U.S.C. § 1252(f) (1988) (permitting reinstatement of a deportation order only if that order had been based on a ground mentioned in subsection (e)); *id.* § 1252(e) (cross-referencing certain grounds for deportation, which were found in § 1251(a)). Thus, for example, an IJ could reinstate a prior deportation order for a noncitizen who had previously been deported based on a prior conviction for an aggravated felony or for a controlled substance offense. *See id.* §§ 1252(e), 1251(a)(4), (a)(11). However, the IJ could not reinstate a deportation order for a noncitizen who had previously been deported merely for being inadmissible at the time of entry, or for having entered without inspection. *See id.* §§ 1252(e), 1251(a)(1), (a)(2).

A noncitizen subject to a reinstatement order in 1990 was provided significant procedural protections. A reinstatement order could be entered only by an IJ, and only after a hearing in which the alien was entitled to bring counsel, to present evidence, and to cross examine witnesses. *See Castro-Cortez v. INS*, 239 F.3d 1037, 1048 (9th Cir. 2001) (citing 8 C.F.R. § 242.23 (repealed 1997)), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30 (2006). *See, e.g.*, *Burr v. INS*, 350 F.2d 87, 88–89 (9th Cir. 1965) (noting that the IJ reinstated the petitioner's deportation order under § 1252(f), after a hearing at which the IJ found that petitioner had previously been deported based on conviction of a crime involving moral turpitude).

As part of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009-546, Congress changed the law with respect to reinstatement orders, replacing the provision that had been in effect when Tomczyk was deported. The new law streamlined removal procedures, reflecting Congress's view that some of the previously required procedures had led to unnecessary delay and expense. *See, e.g.*, H.R. Rep. No. 104-469(I), at 107 (1996) ("Existing procedures to deny entry to and to remove illegal aliens from the United States are cumbersome and duplicative."); S. Rep. 104-249, at 7 (1996) ("Aliens who violate U.S. immigration law should be removed from this country as soon as possible.").

IIRIRA, which both parties agree governs Tomczyk's petition, has changed reinstatement orders in two relevant respects. First, a reinstatement order is no longer keyed to the ground for the prior removal. The new criterion for entry of a reinstatement order is that the noncitizen have "reentered the United States illegally." 8 U.S.C. § 1231(a)(5). IIRIRA does not define "reenter[ing] . . . illegally." Second, protections for a noncitizen subject to a reinstatement order have been greatly reduced. *See* 8 C.F.R. § 241.8. The decision whether to reinstate a prior deportation or removal order is now made by a lay immigration officer rather than by a legally trained IJ. The officer's decision is made after a summary proceeding in which the noncitizen has no right to counsel, has no right to present evidence other than his or her own statement, and no right to cross examine witnesses. *See id.*

We addressed the meaning of "reenter[ing] . . . illegally" under § 1231(a)(5) in *Tamayo-Tamayo*. The petitioner in *Tamayo-Tamayo* had been deported twice before the reentry

at issue. He arrived at a port of entry and used an invalid alien registration card to "dupe" an immigration officer into admitting him to the United States. *Tamayo-Tamayo*, 725 F.3d at 951–52. Focusing on the manner of his reentry, we held that Tamayo-Tamayo was properly subject to reinstatement of his prior order of removal. We rejected his contention that because his reentry was (in his view) "procedurally regular," it was a legal reentry within the meaning of § 1231(a)(5). *Id.* at 952. We concluded that his reentry was "substantively illegal," emphasizing that "he tricked the border official into allowing him physically to enter." *Id.* at 953.

We have applied *Tamayo-Tamayo*'s holding in only one subsequent published opinion. In *Tellez v. Lynch*, 839 F.3d 1175, 1179 (9th Cir. 2016), we held that a noncitizen who "lacked valid documentation and intended to dupe border officials into letting her enter" reentered illegally within the meaning of § 1231(a)(5). Tellez had been removed from the United States and had been forbidden to return within the next five years without prior consent from the Attorney General. *Id.* at 1177. Tellez returned to the United States only a week after she had been deported and was waved through by immigration officers. As in *Tamayo-Tamayo*, our conclusion rested on the petitioner's fraudulent conduct. "Nothing in the statute or elsewhere suggests that Congress intended that the reinstatement provision would not apply to aliens who were able to dupe border officials into thinking that they had authorization to enter, or that Congress otherwise intended to reward fraudulent behavior." *Tamayo-Tamayo*, 725 F.3d at 952.

The government does not argue that Tomczyk "duped" an immigration officer or used fraudulent documentation to reenter the United States in 1991. When Tomczyk reentered in 1991, Canadian citizens were not required to have a visa or even a passport to enter the United States at the Canadian border. *See* 8 C.F.R. § 212.1(a) (1991). Tomczyk represents in his brief that he told the immigration officer at the border when he reentered with friends in July 1991 that he and his friends were coming to the United States "for beers." The immigration officer then waved Tomczyk and his friends through. Assuming the truth of this representation, Tomczyk's case is fundamentally different from *Tamayo-Tamayo* and *Tellez*, where we allowed reinstatement of prior deportation orders for noncitizens who had reentered the United States through fraud.

The government asks us to ignore this difference and to read *Tamayo-Tamayo* and *Tellez* more broadly than their facts support. In the government's view, any time a previously removed noncitizen is unable to demonstrate "that he was eligible for admission at the time of his reentry," the reentry was "illegal" within the meaning of § 1231(a)(5), and an immigration officer may reinstate the prior order of removal after a summary proceeding. The government contends that a noncitizen "reenter[s] . . . illegally" within the meaning of § 1231(a)(5) based on nothing more than the status of the noncitizen. It seeks to define the act of "reenter[ing] . . . illegally" as any "reentry while inadmissible," even for a reentering noncitizen who applied for admission with honest intentions, who made truthful statements at a port of entry, and who was admitted by an immigration officer. We disagree. As we understand the statute, a noncitizen's status of inadmissibility, standing alone, does not mean that the

noncitizen has "reentered . . . illegally" within the meaning of § 1231(a)(5).

The government does not argue that its interpretation of § 1231(a)(5) in this litigation is entitled to deference under *Chevron* and related cases. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). We agree with the government's tacit admission that it is not entitled to deference. We do not give *Chevron* deference to agency decisions made without "a lawmaking pretense in mind," such as those made with little or no procedure and that "stop short of [binding] third parties." *United States v. Mead Corp.*, 533 U.S. 218, 233 (2001). Our cases treat "the precedential value of an agency action as *the* essential factor" in whether to apply *Chevron*. *Marmolejo-Campos v. Holder*, 558 F.3d 903, 909 (9th Cir. 2009) (en banc) (emphasis in original). There is no evidence that the government developed its interpretation of "reenter[ing] . . . illegally" with a "lawmaking pretense in mind," and a reinstatement order entered by an immigration officer has no precedential value. The government's interpretation therefore merits no deference beyond "those factors which give it power to persuade." *Id.* (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Although the INA does not define "reenter[ing] . . . illegally," *see* INA § 101, 8 U.S.C. § 1101, two related sections of the INA that provide civil and criminal penalties for certain wrongful entries and reentries provide helpful guidance. *See* INA §§ 275–76, 8 U.S.C. §§ 1325–26.

Section 1325 imposes criminal and civil penalties on noncitizens who enter between designated ports of entry, elude inspection, or procure admission "by a willfully false or

misleading representation or the willful concealment of a material fact." 8 U.S.C. § 1325(a). Section 1325 is concerned with surreptitious entry and admissions procured by fraud. Illegal reentry under § 1325 is not established by the mere fact of inadmissibility.

Section 1326 imposes criminal penalties on those who reenter the United States in violation of a requirement to obtain advance consent of the Attorney General. 8 U.S.C. § 1326(a)(2). A noncitizen who is removed from the United States is barred from seeking admission without the Attorney General's consent for different periods of time, depending on the basis for removal. *See* 8 U.S.C. § 1182(a)(9). Noncitizens who are removed receive a written warning, on either Form I-294 or Form I-296, explaining that reentry during that period without the Attorney General's permission will result in criminal penalties under § 1326. An inadmissible noncitizen who is not subject to an advance permission requirement or who obtains permission for reentry does not violate § 1326 by reentering the United States. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 830–31 & n.2 (1987). For example, § 1326 would have applied to Tomczyk if he had reentered without permission within a year of his deportation on July 2, 1990. However, after that date, the version of § 1182(a)(16) in effect at the time did not require him to obtain advance permission to reapply for admission. As a Canadian citizen, he was not required to have a visa or a passport to enter the United States at the Canadian border. As under § 1325, illegal reentry under § 1326 is not established by the mere fact of inadmissibility.

Both the Supreme Court and Congress have described § 1326 as punishing "illegal reentry." *See, e.g.*, *United States v. Resendiz-Ponce*, 549 U.S. 102, 105, 107 (2007) (holding

that "an indictment alleging attempted illegal reentry under § 1326(a) need not specifically allege a particular overt act" where it alleged that a noncitizen "knowingly and intentionally" attempted to reenter the United States in violation of a requirement to obtain advance consent of the Attorney General); IIRIRA § 334, 110 Stat. 3009-546, 3009-635 (describing change to sentencing under 8 U.S.C. § 1326(b) as "enhanced penalties for . . . illegal reentry").

Many inadmissible noncitizens who enter or reenter the United States do so without violating § 1325 or § 1326, for these sections do not punish entries or reentries solely on the ground of a noncitizen's inadmissibility. Rather, they punish entries and reentries based on the manner and circumstances of the entry. For example, a noncitizen who sneaks across the border or deceives an immigration officer violates § 1325. *See, e.g.*, *Tamayo-Tamayo*, 725 F.3d at 951–52. A noncitizen who reenters too soon after removal, without waiting for a prescribed consent period to pass and without obtaining advance permission, violates § 1326. *See, e.g.*, *Tellez*, 839 F.3d at 1177. In these cases, an inadmissible noncitizen's violation of the immigration laws by illegal reentry is not based solely on the status of inadmissibility. Rather, it is based on the manner and circumstances of entry or reentry.

The INA's provisions governing relief from removal bolster our conclusion that the status of inadmissibility, standing alone, is not "reenter[ing] . . . illegally" within the meaning of § 1231(a)(5). For example, many inadmissible noncitizens, including those who have left and then reentered the United States while inadmissible, are eligible for asylum. *See, e.g.*, INA § 208, 8 U.S.C. § 1158 (asylum). An asylum applicant concedes inadmissibility as part of the process of

applying for asylum. Indeed, it is the very fact of inadmissibility that prompts the noncitizen refugee to apply for asylum.

Almost all forms of relief from removal, including asylum, are unavailable after reinstatement of a prior removal order. *See Perez-Guzman*, 835 F.3d at 1072. Were we to hold that reinstatement of a prior removal order is proper based solely on inadmissibility of a noncitizen at the time of reentry, we would create an odd result: a previously removed inadmissible noncitizen who applies for admission at a port of entry without yet entering would receive greater protection than a previously removed inadmissible noncitizen who arrives at a port of entry, makes truthful statements to an immigration officer, and is waved in by the immigration officer. For example, a previously removed inadmissible noncitizen who remains on the Canadian side of the border while asking for asylum would be eligible to apply. But as soon as an immigration officer waves the asylum-seeking inadmissible noncitizen across the border, asylum would be unavailable.

Further, reinstatement of prior removal orders based solely on inadmissibility at the time of reentry would pose severe practical difficulties. In many instances, inadmissibility at the time of reentry is not apparent based on the prior order of removal. In such cases, an immigration officer will have great difficulty in determining inadmissibility at the time of reentry, particularly if the reentry, as in Tomczyk's case, was several decades earlier. There are many grounds for inadmissibility. To give only a few of the many grounds listed in 8 U.S.C. § 1182: noncitizens are inadmissible if they have "a communicable disease of public significance" at the time of entry,

§ 1182(a)(1)(A)(i); if they are "drug abuser[s] or addict[s]" at the time of entry, § 1182(a)(1)(A)(iv); if they come to the United States to engage in prostitution, § 1182(a)(2)(D); if the Attorney General has reasonable ground to believe, at the time of entry, that they are entering to engage in terrorist activity, and their spouse and children are similarly inadmissible unless they should not reasonably have known of that activity, § 1182(a)(3)(B)(i)(II), (B)(i)(IX), (B)(ii)(I); if the Secretary of State has reasonable ground to believe, at the time of the entry, that their admission would cause adverse foreign policy consequences, § 1182(a)(3)(C)(i); if they are members of a totalitarian party, such as the Communist Party, § 1182(a)(3)(D)(i); if they are likely to become "public charge[s]," § 1182(a)(4)(A). All of these, and many more, are grounds of inadmissibility. Under the government's view of § 1231(a)(5), an immigration officer is expected to reinstate prior removal orders based on inadmissibility at the time of reentry on any of these grounds, even for reentries that took place many years earlier. We think it is extremely unlikely that Congress intended immigration officers, in summary proceedings, to determine inadmissibility and enter reinstatement orders in such cases.

The DHS regulation governing reinstatement orders reinforces our understanding of § 1231(a)(5). The regulation strongly suggests that the manner and circumstances of an inadmissible noncitizen's reentry, rather than inadmissibility alone, is the determinative factor. *See* 8 C.F.R. § 241.8. The regulation provides that in determining whether a noncitizen "reenter[s] . . . illegally" for purposes of § 1231(a)(5), "the officer shall consider all relevant evidence, including statements made by the alien and any evidence in the alien's possession. The immigration officer shall attempt to verify an alien's claim, if any, that he or she was lawfully admitted,

which shall include a check of Service data systems available to the officer." 8 C.F.R. § 241.8(a)(3). The evidence thus described in the regulation allows an immigration officer to assess the manner and circumstances of the noncitizen's reentry, and therefore whether the noncitizen entered without permission or inspection or procured admission by fraud. However, as just noted, many of the possible grounds of inadmissibility involve relatively complex determinations that cannot be made using the limited evidence described in the regulation.

When we held en banc in *Morales-Izquierdo* that entry of reinstatement orders by immigration officers satisfies due process, we relied heavily on the fact that § 1231(a)(5) and its implementing regulation, 8 C.F.R. § 241.8(a)(3), call for a relatively simple assessment of the manner and circumstances of the noncitizen's reentry. *See* 486 F.3d at 495–96. We held that the risk of an erroneous reinstatement determination was "extremely low" because the regulation requires only a "narrow and mechanical determination[]" by the immigration officer. *Id.* at 496. Were we to accept the government's position that the availability of a reinstatement order depends solely on a noncitizen's admissibility at the time of reentry, rather than the manner and circumstances of reentry, our basis for upholding § 1231(a)(5) in *Morales-Izquierdo* would disappear. We are bound by our view, as expressed in that case, that reinstatement requires only a simple, ministerial determination by an immigration officer.

We therefore hold that a noncitizen has not "reentered the United States illegally" within the meaning of § 1231(a)(5) based solely on the fact of inadmissibility at the time of reentry. Rather, the act of "reenter[ing] . . . illegally" under § 1231(a)(5) requires some form of misconduct by the

noncitizen—such as entering without inspection, entering in violation of a requirement to obtain advance consent from the Attorney General, or procuring admission by fraud—rather than merely the status of inadmissibility. We conclude that this interpretation of § 1231(a)(5) best comports with the structure of the INA, with the regulations governing reinstatement of removal orders, and with our reasoning in *Morales-Izquierdo* and *Tamayo-Tamayo*. We therefore grant the petition and remand for application of the correct legal standard under § 1231(a)(5).

On remand, DHS may determine that Tomczyk is not subject to reinstatement of his prior deportation order under this standard and should be placed in regular removal proceedings before an IJ under § 1229a. Alternatively, DHS may determine on a more developed factual record that Tomczyk reentered without inspection, reentered within one year of June 2, 1990 without prior permission of the Attorney General, or procured admission by fraud. In the posture of this case, we decline to address Tomczyk's remaining arguments that reinstatement under § 1231(a)(5) would violate his substantive and procedural due process rights.

Conclusion

Because we conclude that DHS applied the wrong legal standard for reinstatement of a prior order of removal under § 1231(a)(5), we grant the petition and remand for further proceedings consistent with this opinion.

**PETITION GRANTED and REMANDED.**

BYBEE, Circuit Judge, dissenting:

Gary Tomczyk is a Canadian citizen. He was deported from the United States in 1990 under a final order of exclusion and deportation. Roughly one year later, in July 1991, he reentered the United States at a port-of-entry in Washington—ostensibly to get beer—and settled here. In 2016, the Department of Homeland Security (DHS) ordered his 1990 deportation order reinstated. Tomczyk now petitions for review of his reinstatement order.

The majority grants Tomczyk's petition for review on the basis that DHS applied the incorrect legal standard in determining whether Tomczyk "illegally reentered" the United States under 8 U.S.C. § 1231(a)(5). Maj. Op. at 19–20. But DHS did not do so. Tomczyk was inadmissible when he entered the United States in 1990 because he had a conviction in Canada for trafficking in a controlled substance. His status—inadmissible—did not change between 1990 and 1991 when he reentered, and for that reason his prior deportation order may be reinstated.[1] The majority's opinion is inconsistent with our decisions in *Tamayo-Tamayo v. Holder*, 725 F.3d 950 (9th Cir. 2013), and *Tellez v. Lynch*, 839 F.3d 1175 (9th Cir. 2016), and creates a circuit conflict. Our law is clear: even if Tomcyzk's reentry into the United States was "*procedurally* regular," it remained "*substantively* illegal," and he is subject to reinstatement of his prior order of deportation. *Tamayo-Tamayo*, 725 F.3d

---

[1] The majority points out that Tomczyk's brief states that he received a full and unconditional pardon for his offenses and the convictions were expunged. Maj. Op. at 6. However, Tomczyk does not indicate *when* this pardon and expungement took place, nor does he offer any argument over its effect on U.S. immigration law.

at 953 (emphasis added).  I would deny Tomczyk's petition for review of his reinstatement order.

## I. IMMIGRATION AND NATIONALITY ACT

Tomcyzk's petition is governed by 8 U.S.C. § 1231(a)(5). *See Ixcot v. Holder*, 646 F.3d 1202, 1213 (9th Cir. 2011); Maj. Op. at 11.  However, because the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) substantially amended the Immigration and Nationality Act (INA) between Tomczyk's 1991 reentry and the 2016 reinstatement of the 1990 deportation order, it will be useful to trace the INA as codified at the time of Tomczyk's 1990 exclusion and 1991 reentry to the INA as currently codified.

## A.  *The Immigration and Nationality Act as Codified in 1988*

Tomczyk's 1990 exclusion proceedings were held under 8 U.S.C. § 1226 (1988).[2]   Section 1226 provided for proceedings where a "special inquiry officer" "shall have authority in any case to determine whether an arriving alien who has been detained for further inquiry . . . shall be allowed to enter or shall be excluded and deported."  8 U.S.C. § 1226(a) (1988).  The officer's determination "shall be based only on the evidence produced at the inquiry."  *Id.*  The statute also granted a right to appeal the order "to the Attorney General."  *Id.* § 1226(b).  The decision of the special inquiry officer "shall be final unless reversed on appeal to the Attorney General."  *Id.* § 1226(c).

---

[2] The effective version of the INA at the time of both Tomczyk's 1990 deportation and 1991 reentry was codified in the 1988 *United States Code*.  For clarity, I will refer to the INA by its codified section number in the *United States Code*.

At the time of Tomczyk's 1990 exclusion and his 1991 reentry, 8 U.S.C. § 1182 set out the categories of excludable aliens. *See id.* § 1182(a) (1988). In the 1990 order of exclusion and deportation, the immigration judge[3] (IJ) ordered Tomczyk excluded pursuant to 8 U.S.C. §§ 1182(a)(20), (23) (1988). These provisions provided for the exclusion of (1) aliens without valid entry documents, *see id.* § 1182(a)(20),[4] and (2) aliens convicted of certain drug violations, including possession of marijuana, *see id.* § 1182(a)(23).[5] Thus, Tomczyk was excluded in 1990

---

[3] Referred to by statute as the "special inquiry officer," *see* 8 U.S.C. § 1226(a) (1988). *See also* 8 C.F.R. § 1.1(l) (1991) ("The term *immigration judge* means special inquiry officer . . . .").

[4] In full, § 1182(a)(20) (1988) provides:

> Except as otherwise specifically provided in this chapter, any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General pursuant to section 1181(a) of this title.

[5] In full, § 1182(a)(23) (1988) provides:

> Any alien who has been convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs or marihuana, or who has been convicted of a violation of, or a conspiracy to violate, any law or regulation or controlling the taxing, manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, exportation, or

because he lacked valid entry documents and had prior Canadian convictions for a controlled substance violation. Under §§ 1182(a)(16), 1326(a) (1988), aliens seeking admission within a year of being excluded from the United States must have the permission of the Attorney General, or they face not just *immigration* consequences, but *criminal* sanctions.**[6]**  When Tomczyk was deported in 1990, he was

---

> the possession for the purpose of the manufacture, production, compounding, transportation, sale, exchange, dispensing, giving away, importation, or exportation of opium, coca leaves, heroin, marihuana, or any salt derivative, or preparation of opium of coca leaves, or insonipecaine or any addiction-forming or addiction-sustaining opiate; or any alien who the consular officer or immigration officer know or have reason to believe is or has been an illicit trafficker in any of the aforementioned drugs. . . .

**[6]** Section 1182(a)(16) (1988) permits exclusion of aliens who were previously "excluded from admission and deported and who again seek admission within one year from the date of such deportation" unless "the Attorney General has consented to their reapplying for admission" beforehand.

Section 1326(a) (1988) provides:

[A]ny alien who–

> (1) has been . . .  excluded and deported, and thereafter

> (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) . . . such alien shall establish that

issued a warning that was consistent with § 1182(a)(16).  The warning stated,

> An immigration judge has ordered that you be excluded from admission into the United States, and that you be deported from the United States.
>
> If after your deportation is effected, you desire to reenter the United States within one year from the date of such deportation, you must, prior to commencing your travel to this country, request permission from the Attorney General to reapply for admission into the United States.  Application forms for requesting such permission may be obtained by contacting any United States Consulate or office of the United States Immigration and Naturalization Service.
>
> Your reentry within one year of the date of your deportation without the express permission of the Attorney General will subject you to prosecution as a felon and, if convicted therefor, you could be sentenced to imprisonment for not more than two years or fined not more than $1000, or both.

---

> he was not required to obtain such advance such advance consent under this chapter or any prior Act,

shall be guilty of a felony, and upon conviction thereof, be punished by imprisonment of not more than two years, or by a fine of not more than $1,000, or both.

The generic warning issued to Tomczyk was consistent with this additional ground of excludability in § 1182(a)(16). However, the warning did not advise Tomczyk that he was free to reenter the United States after one year. Rather, it advised him that the was subject to *criminal* prosecution if he reentered the United States within a year and without the Attorney General's permission, consistent with § 1326(a). Tomczyk remained *excludable* under § 1182(a)(23) for the reason for which he had been deported—he had a controlled substance conviction. Nothing in the notice advised him that he would become eligible for admission after a year.

At the time of Tomczyk's deportation and reentry, the INA also authorized the reinstatement of certain prior orders of deportation against any alien that "unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation." 8 U.S.C. § 1252(f) (1988).[7] Deportation orders would be reinstated if the order was issued on specified grounds, including that the alien had at anytime been convicted of a controlled substance

---

[7] In full, § 1252(f) (1988) provides:

> Should the Attorney General find that any alien has unlawfully reentered the United States after having previously departed or been deported pursuant to an order of deportation, whether before or after June 27, 1952, on any ground described in any of the paragraphs in subsection (e) of this section, the previous order of deportation shall be deemed to be reinstated from its original date and such alien shall be deported under such previous order at any time subsequent to such reentry. For the purposes of subsection (e) of this section the date on which the finding is made that such reinstatement is appropriate shall be deemed the date of the final order of deportation.

offense.  *See id.* §§ 1251(a)(11), 1252(e), (f).  Thus, at the time of his reentry in 1991, Tomczyk would have been subject to reinstatement of his 1990 deportation order under § 1252(f) if he "unlawfully reentered the United States."

B. *The Current INA, as Amended by The Illegal Immigration Reform and Immigration Responsibility Act of 1996*

The current INA, as amended by IIRIRA, now authorizes several types of removal proceedings and procedures, many of which were intended to streamline the immigration system and reduce judicial oversight.  One such procedure is reinstated removal under 8 U.S.C. § 1231(a)(5).  Section 1231(a)(5) provides,

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

Thus, the new reinstatement provision allowed for *any* prior order of removal to be reinstated, and exchanged the term "illegal" for the prior term "unlawful."  *Compare* 8 U.S.C. § 1252(f) (1988) *with* 8 U.S.C. § 1231(a)(5) (2018).

The amendments also modified the "excludable" alien provisions.  The current version of the INA makes aliens "inadmissible" rather than "excludable."  *See* 8 U.S.C.

§ 1182(a) (2018).  The various categories were reorganized and some language was modified.  However, aliens without valid entry documents, *see id.* § 1182(a)(7), aliens with controlled substance convictions, *see id.* §§ 1182(a)(2)(A)(i)(II), (C)(i), and previously removed aliens who do not seek and receive the Attorney General's consent before seeking admission within certain time periods, *see id.* § 1182(a)(9),[8] continue to be inadmissible under the current version of the INA.  Thus, the grounds under which Tomczyk was excluded in 1990 remain valid grounds for inadmissibility today.

## II. REINSTATEMENT

As I have noted, the INA provides for the reinstatement of a prior order of removal when a previously excluded alien "has reentered the United States illegally."  8 U.S.C. § 1231(a)(5).  Like the majority, I recognize "[t]he consequences of reinstatement for a noncitizen are profound," Maj. Op. at 8, because a noncitizen subject to reinstatement of a removal order under § 1231(a)(5) is not entitled to a hearing before an IJ.  Reinstatement orders are entered by DHS officers and require no further administrative or judicial process before immediate removal.  8 C.F.R. § 241.8(a).  An

---

[8] The term of inadmissibility varies based upon the type of prior removal.  *See* 8 U.S.C. § 1182(a)(9)(A)(i) (2018) (aliens removed upon arrival under § 1225(b)(1) or at the end of § 1229a proceedings and who seek admission within five years of removal are inadmissible); *id.* § 1182(a)(9)(A)(ii) (aliens not covered by (A)(i) who have previously been ordered removed under § 1229a or any other provision of law and seek admission within ten years of departure or removal are inadmissible).  There continues to be an exception for aliens who have secured the Attorney General's consent to the their reapplication for admission.  *Id.* § 1182(a)(9)(A)(iii).

alien who has had an order reinstated is thereafter ineligible for most forms of relief from removal, including asylum and inadmissibility waivers. *See* 8 C.F.R. § 241.8; *Perez-Guzman v. Lynch*, 835 F.3d 1066, 1082 (9th Cir. 2016).

Tomczyk argues that because he did not "illegally reenter" the United States in 1991, he is entitled to ordinary removal proceedings under § 1229a, where he will seek relief from removal to allow him to care for his severely disabled wife, a United States citizen to whom he has been married for nearly thirty years. Thus, the central question is what constitutes an "illegal reentry" under § 1231(a)(5).

## A. *Illegal Reentry Under Section 1231(a)(5)*

The majority holds that an "illegal reentry" under § 1231(a)(5) requires some additional act beyond the mere fact of reentry while "inadmissible" under § 1182. Maj. Op. at 19–20. The majority ultimately ties the language in § 1231(a)(5) to the criminal statutes governing reentry. Maj. Op. at 14–16. I disagree with the majority's reading of the statute and of our cases, and would hold that an alien who reenters the United States while inadmissible under § 1182 commits an "illegal reentry" for the purpose of § 1231(a)(5). In my view, § 1231(a)(5) is a status offense and does not require the government to prove some corrupt act in addition to the alien's inadmissible status. My conclusion is borne out in our cases.

In *Tamayo-Tamayo v. Holder*, the petitioner had been removed twice before the reentry at issue. 725 F.3d 950, 951 (9th Cir. 2013). Tamayo reentered the United States by presenting his pre-1989 (but invalid) permanent resident card to the border official. *Id.* at 951–52. The official permitted

Tamayo to enter. *Id.* at 952. Sometime after his reentry, Tamayo filed an application to replace his permanent resident card, and the government realized Tamayo "had no legal authority to be in the country." *Id.* The government then reinstated the prior order of removal. *Id.*

We denied Tamayo's petition for review. We held that "[t]he plain text of the statutory provision was met with respect to the 1989 removal order: The Attorney General found that Petitioner had reentered illegally. . . ." *Id.* In evaluating the Attorney General's determination that the petitioner had reentered illegally, we stated that "[w]hen [the p]etitioner reentered the country after his 1993 removal, he lacked valid documentation that permitted him to enter. Accordingly, he was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an alien 'who is not in possession of a valid unexpired [authorization document],' and his entry was illegal."**[9]** *Id.* (alterations in original). Although we commented on Tamayo's "deceptive behavior," we did so in determining that the purported "procedural regularity" of the reentry could not override the fact that the entry was "substantively illegal." *See id.* at 952–54. We determined that petitioner's "deceptive behavior did not render his entry legal." *Id.* at 952.**[10]**

We followed *Tamayo-Tamayo* in *Tellez v. Lynch*, 839 F.3d 1175 (9th Cir. 2016). In *Tellez*, the petitioner was

---

**[9]** We applied the current version of the INA in *Tamayo-Tamayo*.

**[10]** Although the INA makes aliens who procure admission to the United States through "fraud or willful[] misrepresent[ation] [of] a material fact" inadmissible, *see* 8 U.S.C. § 1182(a)(6)(C) (2018) (prior version found at § 1182(a)(19) (1988)), we did not rely on this ground.

initially removed for a lack of valid entry documents. 839 F.3d at 1177. She then signed a statement acknowledging that she could not return to the United States for five years. *Id.* She returned to the United States the following week, without valid entry documents, but "dressed up in a nice pretty dress" and "smiled at the immigration officer" from the passenger seat of a car." *Id.* The officer waved the car through. *Id.* She later applied for an inadmissibility waiver and adjustment of status. *Id.* DHS then reinstated the prior expedited removal order on the grounds that petitioner reentered illegally under § 1231(a)(5). *Id.* As we noted in *Tellez*, a "successful entry can still be an illegal entry." *Id.* at 1178. We referred to *Tamayo-Tamayo* as "holding on similar facts that an entry was illegal because petitioner 'lacked valid documentation that permitted him to enter.'" *Id.* at 1178–79. In finding the reentry "illegal," *Tellez* held that there was "no question that Tellez lacked valid documentation" and that "[a] pretty dress and charming smile are not substitutes *for a visa*." *Id.* at 1179 (emphasis added). Taken together, these cases indicate that it is the aliens' inadmissibility under substantive law, 8 U.S.C. § 1182, that makes their reentry "illegal" under § 1231(a)(5).

The majority's holding not only is inconsistent with our cases, but it creates a circuit split with a decision from the Tenth Circuit, one we relied on in *Tamayo-Tamayo*. *See* 725 F.3d at 953 (citing, *inter alia*, *Cordova-Soto v. Holder*, 659 F.3d 1029, 1031–35 (10th Cir. 2011)).[11] In *Cordova-*

---

[11] The majority cites the First Circuit's decision in *Ponta-Garcia v. Ashcroft*, 386 F.3d 341 (1st Cir. 2004), but notes that the statement it is quoting is dicta. Maj. Op. at 9. In *Ponta-Garcia*, the First Circuit dismissed the appeal on the government's motion for lack of jurisdiction. *Ponta-Garcia*, 386 F.3d at 343. The language quoted by the majority is

*Soto*, the petitioner was initially removed on the basis of multiple grounds. 659 F.3d at 1030. Cordova-Soto stipulated to removal. *Id.* As part of the stipulation, she acknowledged (1) her need to reapply for admission; (2) that she may not be eligible for admission in the future, and (3) that she could not legally return for at least 10 years without special permission of the AG, and (4) if convicted of an aggravated felony, she could not return at any time without special permission from the Attorney General. *See id.* Cordova-Soto reentered the United States less than one month after her removal and had not applied to the Attorney General for permission to enter. *Id.* at 1031. Cordova-Soto asserted that because her entry was "procedurally regular, she did not reenter the United States illegally." *Id.* at 1032. Relying on its prior opinion in *Lorenzo v. Mukasey*, 508 F.3d 1278, 1282–83 (10th Cir. 2007), the Tenth Circuit held that "petitioner's allegations failed to establish that she entered the country legally because she was inadmissible at that time." *Cordova-Soto*, 659 F.3d at 1032 (citing *Lorenzo*, 508 F.3d at 1282–83). Thus, in *Cordova-Soto*, the "reentry less than a month after her removal was illegal because she was inadmissible under § 1182(a)(9)(A)(ii)." 659 F.3d at 1033.

The Tenth Circuit also addressed whether a procedurally regular entry could convert an otherwise illegal reentry into a lawful entry. *See id.* The court concluded that it was not persuaded by Cordova-Soto's argument that "the language

---

the purest dicta, as the court admitted. *Id*. ("We add a coda."). The "coda" then refers to facts not verified and is unsupported by statutes, regulations, or case law. Given our contrary holdings in *Tamayo-Tamayo* and *Tellez*, and the Tenth Circuit's contrary holding in *Cordova-Soto*, the First Circuit's "coda" is thin support, even for a citation preceded by "*Accord.*"

'reentered the United States illegally' in § 1231(a)(5) does not mean a reentry in violation of substantive law." *Id.* at 1034. As we did in *Tamayo-Tamayo*, the Tenth Circuit rejected this argument and concluded that "reentered the United States illegally" means a reentry in violation of substantive law, including § 1182, regardless of whether the alien's entry was procedurally regular. *See id.* at 1035.

The majority effectively introduces a *mens rea* element into the definition of illegal re-entry. *See* Maj. Op. at 13 ("The government does not argue that Tomczyk 'duped' an immigration officer or used fraudulent documentation to reenter the United States in 1991."). Such an element might be relevant to *criminal* violations of our immigration laws, but Tomczyk has not been charged with a crime. And just because Tomczyk didn't affirmatively defraud officers at the port-of-entry doesn't mean that he could lawfully enter the United States.**[12]**  The majority's introduction of a fraud element is contrary to our conclusion in *Tamayo-Tamayo*: "nothing suggests that Congress intended the *procedural* definition to apply to the phrase 'reentered the United States illegally' in § 1231(a)(5)." 725 F.3d at 953 (emphasis added). It is also contrary to our statement in *Tellez* that a "successful entry can still be an illegal entry." 839 F.3d at 1178. As we stated in *Tamayo-Tamayo*, a "*procedurally* regular" entry does not justify a "*substantively* illegal" reentry under § 1231(a)(5). 725 F.3d at 953 (emphasis added). A reentry is substantively illegal when the alien

---

**[12]** In fact, Tomczyk did misrepresent himself at the border. He told the officer that he and his friends were coming "for beer" and then stayed for three decades. The United States might be able to pursue criminal charges against Tomczyk for entering the United States based on his "willfully false or misleading representation." 8 U.S.C. § 1325(a).

reenters while inadmissible, even if the entry was otherwise "procedurally lawful."**[13]**

The majority points to §§ 1325 and 1326 with the observation that "[m]any inadmissible noncitizens who enter or reenter the United States do so without violating" those provisions. Maj. Op. at 16. That may be true, but it is irrelevant to this case. Tomczyk has not been charged with any criminal offense under §§ 1325 and 1326. DHS has only said that Tomczyk illegally reentered the United States and was subject to a prior order of removal. Both of those statements are true and have nothing to do with §§ 1325 or 1326. Moreover, the majority's claim that those sections are "not based solely on the status of inadmissibility," Maj. Op. at 16, ignores the fact that they are criminal provisions.

Nor does 8 C.F.R. § 241.8 help the majority's argument. The majority says "[t]he regulation strongly suggests that the manner and circumstances of an inadmissible noncitizen's reentry, rather than inadmissibility alone, is the determinative factor." Maj. Op. at 18. The regulations provides that in determining whether an alien has "illegally reenter[ed] the United States after having been removed," the immigration officer shall consider "[w]hether the alien unlawfully reentered the United States." 8 C.F.R. § 241.8(a)(3). That, of course, is completely circular. But the regulation then explains that the officer "shall attempt to verify an alien's claim . . . that he or she was lawfully admitted." *Id.*

---

**[13]** The majority relies heavily on *Morales-Izquierdo v. Gonzales*, 486 F.3d 484 (9th Cir. 2007) (en banc) to support its interpretation that "illegal reentry" requires something more than re-entry while inadmissible. Maj. Op. at 19–20. But the majority ignores that both *Tamayo-Tamayo* and *Tellez* were decided after *Morales-Izquierdo*.

"Lawfully admitted" does not mean "waved through a port of entry" or, as in this case, "waved through a port of entry by an inattentive border officer who was told that the guys were just coming for beers and was not told that Tomcyzk had a prior exclusion and deportation order for a controlled substance offense." We have already rejected this argument, twice. *See Tellez*, 839 F.3d at 1178–79; *Tamayo-Tamayo*, 725 F.3d at 953.

The majority places some stock in the fact that "[w]hen Tomczyk reentered in 1991, Canadian citizens were not required to have a visa or even a passport to enter the United States at the Canadian border." Maj. Op. at 13 (citing 8 C.F.R. § 212.1(a) (1991)). That observation is true. But those exceptions for Canadian citizens didn't exempt Tomczyk from the requirement that he "establish to the satisfaction of the immigration officer that [he] is not subject to exclusion under the immigration laws and is entitled . . . to enter the United States." 8 C.F.R. § 235.1(d)(1). When he presented himself at the port-of-entry with his friends, Tomczyk was not an ordinary Canadian national. Tomczyk, as he well knew, had been previously deported from the United States because he had a controlled substance violation. That put him in a different category of aliens—he continued to be inadmissible under 8 U.S.C. § 1182(a)(23) (1988)—who were therefore required to seek a waiver of their inadmissibility before reentering the United States. *See id.* §§ 1182(d)(3)(B) (waiver for temporary admissibility), 1182(h) (waiver of § 1182(a)(23) for admission for permanent residence). Receipt of one of those waivers would have given Tomcyzk a "claim . . . that he . . . was lawfully [admissible]," one that an "immigration officer [should] attempt to verify." 8 C.F.R. § 241.8(a)(3). Section 1182(d)(3)(B) (1988) provides:

> Except as provided in this subsection, an alien
> . . . who is inadmissible under one or more of
> the paragraphs enumerated in [§ 1182(a)]
> (other than paragraphs (27), (29), and (33)),
> but who is in possession of appropriate
> documents or is granted a waiver thereof and
> is seeking admission, may be admitted into
> the United States temporarily as a
> nonimmigrant in the discretion of the attorney
> general.

Under 8 C.F.R. § 212.4 (1991), "[a]n application for the exercise of discretion under section 212(d)(3)(B) of the Act *shall* be submitted on Form I-192 to the district director in charge of the applicant's intended port of entry prior to the applicant's arrival in the United States." (emphasis added). It further requires that "[w]hen the application is made because the applicant may be inadmissible due to the conviction of one or more crimes, the designation of each crime, the date and place of its commission and of the conviction thereof, and the sentence or other judgment of the court shall be stated in the application." *Id.* There is no evidence in the record that Tomczyk made such application for temporary admission at the time he reentered the United States. Thus, Tomczyk was inadmissible as a matter of *law* when he reentered. That an immigration officer in *fact* waved him in does not make him admissible.

## B. *Estoppel*

Tomczyk asserts that the government should be estoped "from asserting anything other than a lawful entry by inspection." Traditionally, estoppel "is available against a *nongovernmental* party who has made a knowing false

representation or concealment of material facts to a party ignorant of the facts, with the intention that the other party should rely on it, where the other party actually and detrimentally relies on it." *Mukherjee v. INS*, 793 F.2d 1006, 1008 (9th Cir. 1986) (emphasis added). Estoppel against the government raises a different set of considerations. *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 421 (1990) ("Our own opinions have continued to mention the possibility, in the course of rejecting estoppel arguments, that some type of 'affirmative misconduct' might give rise to estoppel against the Government."). We have said to sustain a claim of estoppel against the United States, a party must show that (1) the government engaged in "affirmative misconduct going beyond mere negligence," *Mukherjee*, 793 F.2d at 1008 (quoting *Morgan v. Heckler*, 779 F.3d 544, 545 (9th Cir. 1985)), and (2) "the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability," *id.* at 1008–09 (quoting *Morgan*, 779 F.2d at 545). Moreover, a party must claim that some right was lost as a result, because "estoppel against the government is unavailable where petitioners have not lost any rights to which they were entitled." *Sulit v. Schiltgen*, 213 F.3d 449, 454 (9th Cir. 2000).

Tomczyk cannot come close to satisfying these criteria. He cannot allege that the warning issued to him in 1990 rose to the level of "affirmative misconduct going beyond mere negligence." *Mukherjee*, 793 F.2d at 1008. The notice Tomczyk received was correct. It warned him that he was subject to arrest if he returned to the United States within a year. It did not purport to give him a comprehensive overview of U.S. immigration law or tell him under what circumstances he could return to the United States in the

future; it was a warning about potential *criminal* liability. Nor can Tomczyk demonstrate that the officer waving him through the port of entry was guilty of any misconduct beyond simple negligence. Tomczyk had no right or privilege to enter the United States; he has not been deprived of anything to which he was entitled. *Sulit*, 213 F.3d at 454.

* * *

Tomczyk is not admissible to the United States. He knew that when he reentered in 1991 because he had been deported as "excludable" when he came in 1990. His status didn't improve with time. He knew he was not welcome and came anyway. DHS has reissued his removal order, as Congress instructed in 8 U.S.C. § 1231(a)(5). There is no error by DHS here.

## III. DUE PROCESS

Tomczyk also raises due process challenges to the reinstatement order and the underlying order of removal. However, Tomczyk has not demonstrated that his right to due process has been violated. *First*, with respect to Tomczyk's assertion that the reinstatement order violates his right to live with his family, our court has soundly rejected this theory. We held in *Morales-Izquierdo v. Dep't of Homeland Sec.*, 600 F.3d 1076, 1091 (9th Cir. 2010), *overruled in part on other grounds by Garfias-Rodriguez v. Holder*, 702 F.3d 504 (9th Cir. 2012) (en banc), that the lawful denial of adjustment of status does not violate an alien's or the aliens "family's substantive rights protected by the Due Process Clause." Nor does the lawful reinstatement of a prior removal order. *Second*, the reinstatement of the prior order does not violate Tomczyk's right to due process "because reinstatement of a

prior order does not change the alien's rights or remedies." *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 497 (9th Cir. 2007) (en banc).

Finally, Tomczyk's challenge to the validity of his prior order of removal fails. We have repeatedly held that we lack jurisdiction to review the order of removal underlying a reinstatement order, unless the alien can show a "gross miscarriage of justice." *Garcia de Rincon v. Dep't of Homeland Sec.*, 539 F.3d 1133, 1138 (9th Cir. 2008); 8 U.S.C. § 1231(a)(5) ("the prior order of removal . . . is not subject to being reopened or reviewed"). Tomczyk cannot meet this burden. Tomczyk never appealed his initial deportation order. Moreover, Tomczyk raises no legal challenge to one of the two provisions under which he was removed, 8 U.S.C. § 1182(a)(20). Because he has not challenged that rationale, he cannot show the prejudice necessary to establish that the initial removal order was a gross miscarriage of justice. We are therefore without jurisdiction to review the underlying order.

## IV. CONCLUSION

DHS did not apply the incorrect legal standard in determining whether Tomczyk "illegally reentered the United States." Because Tomczyk is (1) an alien, (2) subject to a prior order of removal, who (3) illegally reentered the United States in 1991, his prior exclusion order is subject to reinstatement under 8 U.S.C. § 1231(a)(5). Tomczyk's petition should be denied.

I respectfully dissent.